*Mayor and City Council of Baltimore v. Theresa Abel, et al.*, No. 26, September Term, 2025, Opinion by Booth, J.

**MARYLAND'S COMMON LAW OF PRIVATE NUISANCE**

Under Maryland common law, liability for private nuisance is established by considering not only the significance of the invasion of the plaintiff's reasonable use and enjoyment of his or her land but also the reasonableness of the defendant's conduct or use of his or her property that causes the invasion. When considering the reasonableness of the defendant's conduct that causes the invasion, Maryland's private nuisance common law requires that the defendant engage in wrongful conduct. A private nuisance claim may arise from more than one type of conduct. For example, it may arise from conduct that is negligent, reckless, or abnormally dangerous. Where a defendant's conduct is not otherwise negligent, reckless, or abnormally dangerous, the conduct may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion onto plaintiff's use and enjoyment of his or her property. Once it is established that a defendant's wrongful conduct is creating a private nuisance by causing a significant and unreasonable interference with a plaintiff's use and enjoyment of plaintiff's land, the defendant is strictly liable for damages resulting therefrom.

In this case, viewing the evidence in the light most favorable to the plaintiffs, the Supreme Court of Maryland determined that the plaintiffs failed to present legally sufficient evidence to generate a jury question on the issue of whether the invasion of their use and enjoyment of land was caused by wrongful conduct of the City of Baltimore.

IN THE SUPREME COURT

OF MARYLAND

No. 26

September Term, 2025

MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

THERESA ABEL, et al.

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

Opinion by Booth, J.
Watts and Killough, J.J., dissent.

Filed: July 29, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This case arises out of a 2019 sewage backup that occurred in the home of Respondents Theresa and Christopher Abel (the "Abels"). The Abels sued the Mayor and City Council of Baltimore (the "City") in 2022, alleging claims for negligence and private nuisance. After the City unsuccessfully moved for summary judgment, both claims proceeded to a jury trial. At the close of the Abels' case, and again at the close of the evidence, the City moved for judgment as a matter of law arguing, among other things, that the evidence did not meet the legal requirements for a finding of private nuisance. After the trial court denied the motions, the jury returned a verdict in the City's favor on the negligence count. However, the jury found the City liable for creating a private nuisance associated with the 2019 backup and awarded the Abels damages. The City appealed. The Appellate Court of Maryland affirmed the circuit court judgment in an unreported opinion.

This Court granted certiorari to determine the following questions, which we have rephrased:

1. Whether the Appellate Court erred when it held that, for purposes of establishing private nuisance liability, the reasonableness of the defendant's use of land is determined solely by the significance of the interference with the plaintiffs' right to use plaintiffs' land.

2. Whether the Appellate Court erred when it held that, for purposes of establishing private nuisance liability, the requirement of continuousness or recurrence of the intrusion was met.

3. Whether the Appellate Court erred when it held that the evidence presented was sufficient to support private nuisance liability against the City for a single one-day sewer backup in the Abels' basement in 2019.

For the reasons set forth more fully herein, we reverse the judgment of the Appellate Court.

# I

## Procedural History

In March 2024, the Abels presented the following evidence in connection with their negligence and private nuisance claims concerning the 2019 sewer backup in their basement.[1]

### A. Testimony at Trial

Ms. Abel testified that she and her husband had been renting their home at 2011 Griffis Avenue in Baltimore City since 2010. In the nine years they lived there, before the backup in 2019, Ms. Abel testified that she never had "any issues with sewage backups[.]" The Abels' next-door neighbor also testified that she never had any sewer backups in her house.

#### The Abels' December 28 Backup

Early in the day on December 28, 2019, Ms. Abel noticed "some water trickling out from underneath the base of the toilet" in the basement, a problem she had never had before. The water was light brown in color and smelled bad. The Abels put towels down to contain the water and called a plumber. The plumber came out but did not fix the issue, and the Abels left for the day, hoping the issue would resolve on its own. When they returned to their home at approximately 9:00 p.m., the water had spread further, the odor was like "the

---

[1] The Abels' lawsuit against the City also included allegations of an additional sewage backup that occurred in 2022. The jury found the City liable in negligence and nuisance for damages caused by that backup. According to the City, because of the finding of negligence, it did not challenge that award. The case before us involves only the 2019 backup, which was separate from and unrelated to the 2022 backup.

hippo house at the zoo," and the basement bathtub "looked like it had mud in it" that was "maybe four, five inches" deep.

Ms. Abel testified that, at some point after 9:00 p.m. on December 28, 2019, they called the City's 311 "nonemergency service number" to report their backup and were told that the City's responders "were busy" responding to other calls but that someone would be out to address the issue within 24 hours of the call. The City's corporate designee confirmed that when 311 receives reports of sewage backups, those reports become service requests that are "put into a queue" so that the City's cleaning truck crews can respond to those calls in order.

When the Abels woke up the next morning on December 29, the sewage water had spread further out on the basement floor. At 10:00 a.m., the Abels again called the City's 311 nonemergency service number. Ms. Abel further testified that, at some point after noon, they called the City's 311 nonemergency service number a third time, but this time asked to speak with a supervisor. Their discussion led the City's supervisor to escalate their case's priority. The City's crew arrived with a sewer cleaning truck by 2:30 p.m., roughly 17 hours after the Abels' first call to the City's 311 nonemergency service number. The water stopped backing up into the Abels' basement roughly 15 minutes after the City's truck arrived at their home.

At trial, it was undisputed that the backup was caused by a clog in the City's main sewage line.[2] The Abels' expert witness in sewer system engineering, Anthony Paglia, testified that "there are no written standards as far as response time in the industry" regarding how quickly a sewer operator should respond to a call about a sewer backup. He was not permitted to testify as to any non-written standard regarding response times in the industry. The expert then tried to testify as to why the City took 17 hours to respond to the Abels' backup; however, he was not permitted to answer because the court determined that his response would have assumed facts not in evidence. On cross-examination, the Abels' expert admitted that the City had not adopted any industry standards in its policy on standard procedures. He also conceded that his knowledge of the incidents at issue came solely from the City's service reports.

After the Abels' landlord paid for a remediation company to clean their basement, an offensive odor remained for "about a week," according to Ms. Abel, or "at least a

---

[2] A City Department of Public Works ("DPW") employee explained the differences between the "lateral" sewage lines that service each house and the "main" sewage line, where all sewage flows in the middle of the street:

> [Defense Counsel:] Can you describe to the jury what a main line is?
>
> [DPW employee:] The main line is the main -- it's the circle of pipe that's in the middle of the street where all your sewage goes to from the laterals.
>
> [Defense Counsel:] And can you explain a lateral, please?
>
> [DPW employee:] The laterals is connected to the main line, which goes in the middle of the street. The laterals to go to each -- service of each house or building.

month," according to Mr. Abel. Photographs from the 2019 backup and the damage it caused were admitted into evidence. After the 2019 backup, the Abels did not have any other issues with their sewer for more than two years.

Ms. Abel testified that the fair market value of their home was $75,000 when they bought it in 2021, though they paid $45,000 for it. She also testified that in her neighborhood, the rental value of a one-bedroom basement unit similar to theirs was $600 per month.

### Upstream Backup on December 23

On December 23, 2019—five days before the backup into the Abels' home—one of the Abels' upstream neighbors experienced a sewer backup. The Abels' expert witness testified that the City had cleared this blockage "and cleaned 300 feet of the sewers" on that date. He also testified that "[t]he standard in the industry is to clean the areas of the sewer that were affected by the blockage[,]" and that after that earlier blockage, "[t]he condition of the sewer was such that the blockage had been removed." The Abels' expert tried to testify that it was his opinion that the City had failed to properly clean the sewer, but the court sustained an objection and granted a motion to strike for lack of any factual basis for that opinion. He was then allowed to testify that, in his opinion, the City should have cleaned further upstream in the sewer than it did on December 23, 2019, and that the failure to do so allowed the rags, grease, and debris upstream in the sewer to form the blockage that caused the backup in the Abels' basement five days later on December 28, 2019.

### B. Motions for Judgment

At the close of the Abels' case, the City moved for judgment as a matter of law on both the negligence claim and the nuisance claim, arguing that the City had no notice of the backup, that the Abels' expert's testimony invited speculation, and that liability for private nuisance requires some sort of continuation. The circuit court denied the motions as to both claims, reasoning that the jury could find that the upstream backup that occurred five days prior to the Abels' backup constituted constructive notice, and the jury could find, based on the expert testimony, that the City's work performed five days prior could have caused the Abels' backup. At the close of evidence, the City renewed its motions, and the court denied them again.[3]

### C. The Verdict

The jury found that the City was not liable for negligence but was liable for nuisance, awarding the Abels a judgment in the amount of $18,240.00 on the nuisance claim. The City noted a timely appeal.

---

[3] Prior to jury deliberation, the court issued instructions to the jury, including, in relevant part:

> A nuisance is any unreasonable use of land that causes real, substantial, and unreasonable damage to or interference with another person's ordinary use and enjoyment of his or her property. Generally, nuisance is all conduct that endangers life or health, offends the senses, violates the laws of decency, or obstructs the reasonable and comfortable use and enjoyment of property. The test is not [d]efendant's negligence or whether the interference complies with applicable laws and regulations, but whether the interference is substantial and unreasonable.

6

Nuisance connotes a continuance of the complaining conduct, and a single act not likely to be repeated will not sustain a suit in nuisance. It must materially diminish the property's value, seriously interfere with ordinary comfort and enjoyment. A suit in nuisance involves balancing the correlative rights of the parties. The utility of a defendant's conduct and his or her rights are weighed against the amount of harm to the plaintiff and to his or her rights. The factors to be considered in this weighing are (a) the extent and character of the harm; (b) social value of the parties' respective uses; (c) suitability of each use vis-à-vis the locality; (d) ability of the parties to avoid the harm.

Proof of damage, loss, or inconvenience alone does not establish a nuisance, as there must also be evidence of a wrongful act. Nuisance includes all tangible intrusions on another's property, including noise, odor, and lights, and is not contingent on physical impingement on the other's property but on the substantial and unreasonable interference with the other's use and enjoyment of his or her property.

[L]awful possession of land without ownership is sufficient to bring action even if the possession is a prescriptive right acquired by adverse possession.

Unreasonable use of land. Use of land is unreasonable if [] it is for the purpose of interfering with another person's use and enjoyment, or it is prohibited by law or violates regulations that were adopted to control the use of property, or it is not suitable for the nature of the area and the use being made of other property in the area, or it causes interference with another person's use and enjoyment and the interference could have been reduced or eliminated without too much hardship or too much expense.

In determining whether the use of land was unreasonable, you should consider whether it was the kind of use an ordinary person would expect might interfere with the use and enjoyment of another person's property or cause real and substantial injury to another person's health or comfort. You should also consider the right of both parties to make a reasonable use and enjoyment of their property. The Plaintiff's right to be free from interference with his or her use and enjoyment should be balanced against the Defendant's right to use his or her property, and the Plaintiff must expect to endure some inconvenience or discomfort that results from the Defendant's reasonable use of his or her property.

### D. *Appellate Proceedings*

On appeal, the City argued that the evidence presented at trial was legally insufficient to establish private nuisance liability since there was no evidence that an unreasonable use of land or wrongful act by the City caused the backup, and there was no evidence that the backup was a continuous or recurring infringement on the Abels' use of their property. *Mayor & City Council of Balt. v. Abel*, No. 372, 2025 WL 829733, at *1, *2 (Md. App. Ct. Mar. 17, 2025). The Appellate Court disagreed with the City and affirmed the judgment of the circuit court. *Id.* at *1.

After agreeing with the City that "liability [could not] be based on the mere use of land for a sewer system[,]" the Appellate Court characterized the question before it as "whether the condition created was either continuous or a recurring infringement on the Abels' enjoyment of their property." *Id.* at *3. The court stated that a finding of nuisance "does not turn on a showing of a failure to act reasonably or reckless, intentional, or abnormally dangerous conduct." *Id.* Rather, the court determined, "[w]hether an interference is unreasonable is determined by the injury caused by the condition and not by the conduct of the party creating the condition." *Id.* Applying these principles, the court determined that there was "evidence from which the jury could infer that the act of clearing

---

In determining what reasonable amount of interference, inconvenience, or discomfort the Plaintiffs should be expected to tolerate, you should consider the right of the Defendant to use his or her property or to conduct his or her affairs in a reasonable manner, the extent of interference that would result from the Defendant's reasonable use of his or her property or conduct of his or her affairs, the circumstances under which the interference occurred, the nature of the area in which the real property is located, and the uses being made of other property in the area.

[the sewer line] was not done properly[,]" which the jury "could find . . . caused or contributed to the backup in question, thus satisfying the causation requirement[.]" *Id.* at *4.

In response to the City's assertion that a private nuisance cannot be established by a singular occurrence that does not involve wrongful conduct, the Appellate Court rejected the City's characterization of the act as constituting a single occurrence. *Id.* at *5. Instead, the court stated that, based upon its review of the evidence, "the backup was both ongoing," and "interfered with the Abels' reasonable use and enjoyment of their home," and therefore, "a jury could reasonably find that the interference was continuous or repetitive, substantial, and offensive or inconvenient to the normal person." *Id.* (citation modified). On this basis, the Appellate Court found that the evidence was legally sufficient to create a question for the jury, and that the circuit court therefore properly denied the City's motion for judgment. *Id.*

## II

### Parties' Contentions

The City asserts that the circuit court erred in denying its motion for judgment because the evidence presented at trial was legally insufficient to establish a private nuisance. Specifically, the City contends that (1) there was no evidence that an unreasonable use of land or wrongful act by the City caused the backup, and (2) there was no evidence that the backup was a continuous or recurring infringement on the Abels' use of their property. The City argues that, under Maryland common law, the tort of private nuisance requires not only that the plaintiffs suffer an unreasonable interference with their right to utilize their land, but also that the defendant's use of his or her land involve wrongful conduct—conduct that is either intentional and unreasonable or otherwise legally

9

actionable because it is negligent, reckless, or involves abnormally dangerous conditions or activities. The City points out that the jury found that the City was not negligent for the 2019 backup, and there was no allegation that the City was reckless or that its operation of its sewer system involved an abnormally dangerous activity. Finally, the City asserts that there is no evidence that the intrusion was recurring or continuous. The City contends that where the defendant's conduct is not wrongful, our case law requires that the defendant's conduct be unreasonable. As for the reasonableness of the defendant's use, the City asserts that all of our case law involving private nuisance involves continuous or recurring intrusions onto the plaintiff's use and enjoyment of plaintiff's property.

The City argues that in affirming the circuit court's denial of the City's motion, the Appellate Court applied an incorrect legal standard for determining whether a defendant is liable for private nuisance when it stated that private nuisance liability is determined by "the injury caused by the condition and not by the conduct of the party creating the condition." *Abel*, 2025 WL 82733, at *3. According to the City, Maryland case law requires either wrongful conduct by the defendant in order for the defendant to be liable for private nuisance, or an unreasonable use of land which arises when the defendant's conduct creates a continuous or recurring intrusion onto the plaintiff's use and enjoyment of the plaintiff's property.[4]

---

[4] In its brief, the City argues that our case law aligns with § 822 of the Restatement (Second) of Torts (1979). The City recognizes that this Court has not adopted § 822 and that in *Washington Suburban Sanitary Commission v. CAE-Link Corporation*, 330 Md. 115 (1993), we declined to adopt it when the defendant in that case requested that we do so. In the context of this case, we determine that we do not need to decide whether our case law

10

For their part, the Abels assert that they presented evidence to establish the City's liability for private nuisance. The Abels point out that under *Taylor v. Mayor & City Council of Baltimore*, 130 Md. 133 (1917), the City's operation and maintenance of the sewage system may constitute a private nuisance. The Abels argue that strict liability is the standard for private nuisance under Maryland law and direct us to this Court's opinion in *Washington Suburban Sanitary Commission v. CAE-Link Corporation*, 330 Md. 115, 141 (1993). The Abels also contend that the City misapplies the cases upon which it relies.

According to the Abels, the question of whether the City's conduct was "continuous or recurring" was also appropriately submitted to the jury. The Abels argue that the jury could have considered not only the 2019 backup but also the backup that occurred two years later to find the requisite "recurrence" or "continuance" necessary to maintain an action for private nuisance. The Abels also contend that in *Exxon Mobile Corporation v. Albright*, 433 Md. 303 (2013), this Court upheld a finding of a private nuisance involving a single act of misconduct. In any event, the Abels argue, the Appellate Court appropriately held that there was sufficient evidence for a jury to find that the backup was continuous or repetitive.

## III

### Standard of Review

We conduct a de novo review of a trial court's decision regarding a motion for judgment. *Webb v. Giant of Md., LLC*, 477 Md. 121, 137 (2021). In effectuating that review,

---

aligns with § 822 of the Restatement. We therefore do not consider the City's argument on this issue.

11

we conduct the same analysis as the trial court; that is, we look "at the evidence in a light most favorable to the non-moving party and evaluate[] whether the evidence was sufficient as a matter of law to generate a jury question as to the cause of action at issue." *Id.* If we determine "that the evidence permits only an inference in favor of the moving party regarding the issue presented, then that party is entitled to judgment as a matter of law." *Id.* Here, the parties dispute the legal elements for establishing private nuisance under our case law. Our analysis of the requisite elements of the tort of private nuisance is a question of law that we examine without deference. *Plank v. Cherneski*, 469 Md. 548, 569 (2020).

IV

**Discussion**

We recently discussed the differences under Maryland common law between a public nuisance, which is a public action, and a private nuisance, which is a tort. *Express Scripts, Inc. v. Anne Arundel County*, 493 Md. 329, 366 (2026). In that case, in connection with a certified question related to whether a local government could bring a tort action for public nuisance against certain companies for the licensed dispensing of and administration of benefits plans for opioid drugs, we were asked to determine whether Maryland recognized a common law tort of public nuisance based upon the definition contained in § 821B of the Second Restatement of Torts. *Id.* at 334. In answering the certified question, we discussed, among other things, the English common law of nuisance, Maryland's common law of public and private nuisance and the differences between the two actions, and the Second Restatement's expansion of the common law public nuisance doctrine from a public action to a tort. *Id.* at 360–83, 393–97. After engaging in that discussion, we

12

reached the following conclusions, among others. *Id.* at 393–97.

Although on occasion our cases discuss public and private nuisance together, they are distinct actions, and we have consistently followed the common law principles that define each action. *Id.* at 393–94. A public nuisance is "an injury to the public at large or to all persons who come into contact with it, whereas a private nuisance is an injury to an individual or a limited number of individuals only." *Id.* at 370 (quoting *Adams v. Comm'rs of Trappe*, 204 Md. 165, 170 (1954)) (citation modified).[5] Public nuisance was historically punishable as a crime, *id.* at 361–62, 394, and Maryland has not expanded the public nuisance doctrine beyond the traditional historical principles embodied in the common law—namely, that a public nuisance action was not regarded as a tort but was instead a public action by a government entity to pursue criminal prosecutions or seek injunctive relief to abate harmful conduct, *id.* at 334, 395–97, 413.

"By contrast, private nuisance is a tort involving a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Id.* at 394 (citing *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 80 (1994)). "A plaintiff in a private nuisance action may be entitled to injunctive relief or damages if the plaintiff establishes that he or she has suffered an injury that is different in kind from that suffered by members of the public."

---

[5] "Nuisances are also classified as 'nuisances per se' and 'nuisances in fact.'" *Express Scripts, Inc. v. Anne Arundel County*, 493 Md. 329, 370 (2026) (quoting *Adams v. Comm'rs of Trappe*, 204 Md. 165, 170 (1954)). A nuisance per se "is an act, occupation, or structure which is a nuisance at all times and under any circumstances regardless of location or surroundings." *Adams*, 204 Md. at 170. A nuisance in fact is an act, occupation, or structure that becomes a nuisance only "by reason of the circumstances, location, or surroundings." *Id.* The Abels do not contend that the City's operation of a sewer system is a nuisance per se.

*Id.* (citing *Cook v. Normac Corp.*, 176 Md. 394, 397 (1939); *Garitee v. City of Balt.*, 53 Md. 422, 436–37 (1880); *Houck v. Wachter*, 34 Md. 265, 269 (1871)).

In answering the certified question related to the public nuisance doctrine, we explained that we did "not need to discuss the specific elements necessary to establish a private nuisance." *Id.* at 376. For purposes of that case, we determined that it was "sufficient to note that a finding of [private] nuisance requires evidence of an unreasonable and substantial interference with a plaintiff's use and enjoyment of his or her property." *Id.* (citing *Leatherbury v. Gaylord Fuel Corp.*, 276 Md. 367, 377 (1975); *Hamilton Corp. v. Julian*, 130 Md. 597, 599 (1917)). We further explained that "[t]he alleged injury to the use and enjoyment of property must be of such a nature as to diminish materially the value of the property and to seriously interfere with the ordinary comfort and enjoyment of it." *Id.* (citing *Carr's Beach Amusement Co. v. Annapolis Rds. Prop. Owners' Ass'n*, 222 Md. 392 (1960); *Meadowbrook Swimming Club v. Albert*, 173 Md. 641 (1938); *Adams v. Michael*, 38 Md. 123 (1873)).

In this case, the parties ask us to determine whether the tort of private nuisance is established under Maryland law by proving that *any* conduct on the defendant's land causes an unreasonable and substantial interference with the plaintiff's use and enjoyment of his or her property, or whether the interference must arise from wrongful conduct.

### A. Maryland's Common Law of Private Nuisance

Maryland's private nuisance law encompasses a wide swath of conduct for which we have determined that a defendant is liable when such conduct causes a significant, unreasonable invasion of a plaintiff's reasonable use and enjoyment of land. The invasions

14

include increased surface water flow, offensive odors, noise, vibrations, and conditions that cause sickness and nausea. As we discuss below, some cases involve negligent conduct by the defendant that causes an intrusion onto the plaintiff's use and enjoyment of his or her property. Other cases involve non-negligent conduct that causes a continuous or recurring invasion of the plaintiff's use and enjoyment of his or her property.

### 1. Cases Involving Otherwise Tortious Conduct

Our private nuisance jurisprudence includes a handful of cases in which the harm to the plaintiff's use and enjoyment of his or her property was caused by the defendant's negligent conduct. In other words, the defendant was liable for causing a substantial intrusion onto the plaintiff's use and enjoyment of property because the defendant breached an existing legal duty.

In *Short v. Baltimore City Passenger Railway Company*, 50 Md. 73 (1878), this Court described these principles in a private nuisance case in which a railway company cleared its tracks after a heavy snow. Instead of placing the snow in the street, the railroad company dumped the snow into the gutter, thereby obstructing the natural flow of water from the street and causing an adjacent property owner's home to flood after the snowfall turned to heavy rains. *Id.* at 80. This Court affirmed the damages award in favor of the property owner. *Id*. at 84. We explained that, although the railroad company had the right to remove the snow from its tracks in connection with its business operation and to place the snow in the street, it had no right to throw the snow in the gutter and cause the obstruction of the natural flow of water from the street, which would have been an act of negligence. *Id*. at 83–84. This Court explained that the railroad company was "obliged to

15

exercise ordinary care and prudence, not only in removing the snow from its track, but also in throwing it on the street." *Id.* at 84 (citation modified). The Court concluded that whether such ordinary care was undertaken was a question for the jury. *Id.*

In *Exxon Mobil Corporation v. Albright*, 433 Md. 303 (2013), this Court examined the plaintiffs' various tort claims, including a claim for private nuisance, arising from a series of negligent acts involving an underground gasoline tank that caused significant water contamination to nearby property owners' wells. We summarized the defendant's various negligent acts that led to the contamination. *Id.* at 317–21. First, Exxon failed to follow safety measures during construction. *Id.* at 318. After the station was in operation, during maintenance work, an Exxon contractor negligently drilled a hole into a gas line. *Id.* at 319. After a leak detection system set off an alarm, the contractors who were sent to investigate incorrectly concluded that no leak existed, and incorrectly recalibrated the leak detection system such that the alarm system could no longer detect the actual leak when the fuel system was reactivated. *Id.* at 319–20. As a result of this confluence of events, the leak continued, uninterrupted, without activating the alarm system. *Id.* at 320. One month later, the leak was discovered after an employee noticed inventory discrepancies. *Id.* By then, over 26,000 gallons of gasoline had been released into the underground environment and entered potable wells located on nearby properties. *Id.* We affirmed the

jury's award of damages to certain plaintiffs for their loss of use and enjoyment of their properties arising from the contamination of their well water.  *Id.* at 415–17.[6]

## 2.  *Cases Involving Continuous or Recurring Intrusions*

Many of our private nuisance cases involve a defendant's legitimate business activity where the defendant is engaging in conduct that is causing a continuous or recurring intrusion upon an adjoining or nearby property that causes an injury shown to be of such a character as to diminish materially the value of the property, seriously interfering with the ordinary comfort and enjoyment of it.  In such cases, we have held that "where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his [or her] property a wrong is done to a neighboring owner for which an action lies[.]"  *Meadowbrook Swimming Club v. Albert*, 173 Md. 641, 645 (1938).  Moreover, "it makes no difference that the business [is] lawful and one useful to the public and conducted in the most approved method."  *Id.*; *see also Bishop Processing Co. v. Davis*, 213 Md. 465, 474 (1957); *Susquehanna Fertilizer Co. v. Malone*, 73 Md. 268, 276 (1890).  "Virtually any disturbance of the enjoyment of the property may amount to a nuisance so long as the interference is substantial and unreasonable and such would be offensive or inconvenient to the normal person."  *Wash. Suburban Sanitary Comm'n v. CAE-Link*

---

[6] We disagree with the Abels that *Exxon Mobil Corporation v. Albright*, 433 Md. 303 (2013) supports a finding of private nuisance here.  As noted above, in *Albright*, there were several negligent acts on the defendant's land that led to the plaintiffs' well contamination.  *Id.* at 317–21.  Here, the jury found in favor of the City on the negligence claims related to the 2019 backup.

*Corp.*, 330 Md. 115, 125 (1993) (citing *Gorman v. Sabo*, 210 Md. 155, 159 (1956) (quoting William L. Prosser, *The Law of Torts* 406–07 (2d. ed. 1955))).

The cases in which we have affirmed a finding of private nuisance based upon non-negligent conduct involve continuous or recurring conduct. *See, e.g.*, *Corbi v. Hendrickson*, 268 Md. 459, 468–69 (1973) (affirming injunction of certain conduct related to a nightclub operation causing excessive noise to nearby residential properties); *Bishop Processing Co.*, 213 Md. at 476 (affirming a judicial decree requiring an animal processing plant to implement additional measures to reduce nauseating odors affecting many nearby properties); *Fox v. Ewers*, 195 Md. 650, 662 (1950) (affirming injunctive relief in connection with defendant's parking and storing trucks containing asphalt, which created a nauseating odor and were started at early morning hours thereby creating loud noises); *Meadowbrook Swimming Club*, 173 Md. at 644 (affirming injunction where certain conduct related to an amusement venue's outdoor dancing and bands was causing excessively loud noise); *Washington Cleaners & Dyers, Inc. v. Albrecht*, 157 Md. 389, 401 (1929) (affirming an injunction requiring a fabric cleaning and dyeing factory to alter its business practices to prevent the intrusion of smoke and gasoline vapors onto surrounding properties); *Susquehanna Fertilizer Co.*, 73 Md. at 282–83 (affirming a damages award in favor of the owner of five dwelling houses against owner of a fertilizer factory whose business created daily noxious fumes that discolored clothing hung out to dry, grimed up windows, and corroded tin on houses); *Woodyear v. Schaefer*, 57 Md. 1, 13 (1881) (remanding the case for the issuance of an injunction where a slaughterhouse was continuously emptying blood and animal waste into a stream that created an unbearable

stench, making a downstream mill operator's employees sick); *Dittman v. Repp*, 50 Md. 516, 520 (1879) (affirming injunctive relief in connection with a factory operation's vibrations that caused walls to shake on adjoining property).

A survey of our case law reveals that, in cases in which this Court has upheld a determination of private nuisance that did not otherwise involve negligent conduct, they all involved a continuous or recurrent invasion. None of the cases involved a single invasion. Our observation here is consistent with the same observation that we made in *Wynkoop v. City of Hagerstown*, 159 Md. 194, 202 (1930): "A nuisance necessarily involves the idea of continuance[.]"

### a. Cases Involving Intrusion of Surface Waters

Another category of private nuisance is "surface water" cases—cases involving claims for damages or injunctive relief arising from an increase in surface flow of water on a plaintiff's property because of activities undertaken on a defendant's property. These cases arise from a rule of civil law that governs the flow of surface water, which this Court first applied in *Philadelphia, Wilmington & Baltimore Railroad Company v. Davis*, 68 Md. 281 (1888). Under Maryland's surface water rule, the owners of land are entitled to have surface waters flow naturally over the land of the lower landowner, and the lower landowner cannot obstruct the running of water from the higher land onto his own. *Id*. at 289; *see also Hancock v. Stull*, 206 Md. 117, 119 (1955); *Biberman v. Funkhouser*, 190 Md. 424, 428–29 (1948); *Whitman v. Forney*, 181 Md. 652, 657 (1943). However, although the upper owner has the right to have surface waters flow naturally over the land of the lower owner, the upper owner cannot artificially increase or concentrate the natural

19

flow. *Battisto v. Perkins*, 210 Md. 542, 546 (1956). "If water is unlawfully forced on the lower owner[]" because the upper landowner artificially increased the surface flow, the lower landowner "is entitled to protect his [or her] property from the unwarranted flow." *Hancock*, 206 Md. at 119; *see also Biberman*, 190 Md. at 429; *City Dairy Co. v. Scott*, 129 Md. 548, 553 (1917). Our jurisprudence is replete with private nuisance cases of the continuous intrusion variety involving the artificial alteration of surface water. *See, e.g.*, *Balt. & S.P.R. Co. v. Hackett*, 87 Md. 224, 225 (1898) (upholding judgment in favor of a plaintiff where the defendant railroad company failed to "properly provide and maintain gutters" along the railroad, which caused an increase in surface water that "on several occasions" during a one-month period flooded the plaintiff's land and caused his crops to be destroyed); *Hitchins v. Town of Frostburg*, 68 Md. 100, 113 (1887) (finding that where a municipal corporation changed the natural flow of surface water by altering the elevation of the grade of the street, causing a concentration of water in a gutter that flowed to the mouth of the sewer, the corporation had a duty to provide an adequate means for carrying the water so as to avoid damage to the adjoining property owner).

In *Battisto*, we discussed the application of these principles within the context of the articulation of private nuisance in the First Restatement of Torts and our case law. 210 Md. at 546. In that case, the plaintiffs, who owned eight lots at a lower elevation than the defendants' property, brought a civil action alleging that the defendants "committed an actionable wrong in the nature of a private nuisance." *Id.* at 545. The plaintiffs alleged that prior to the defendants' construction activities, the defendants' land was unimproved and covered with trees and vegetation, which naturally slowed the normal flow of

rainwater. *Id.* According to the plaintiffs, as the result of grading, bulldozing, and building activities in connection with the construction of new residences, the natural flow of water was accelerated, and large quantities of mud and debris flowed onto the plaintiffs' properties, causing great damage. *Id.* The trial court entered judgment in favor of the defendants after trial. *Id.*

On appeal, we noted that there was no allegation of negligence, but that there seemed "to be no question that an action at law [would] lie for a substantial injury of this character," under certain circumstances. *Id.* We examined the legal sufficiency of the plaintiffs' claim by referring to the nuisance principles articulated in the First Restatement. *Id.* at 546. We observed that "[h]istorically, the action for nuisance is older than the action for negligence." *Id.* We stated that "[t]he use of the term 'nuisance' has been criticized on the ground that it confuses the invasion of the property right of use and enjoyment with the conduct that is the true basis of liability." *Id.* at 546 (citing William L. Prosser, *The Law of Torts* § 72 (2d ed. 1955) and the Restatement of Torts, Introductory Note to § 822 (1939)). We also cited to comment a of § 833 of the First Restatement, which notes that, "[w]here the invasion is not intentional, the liability of the person harmfully interfering with the flow of surface waters depends upon whether his [or her] conduct has been negligent, reckless or ultrahazardous . . . . Where, however, the invasion is intentional, liability depends upon whether the invasion is unreasonable[.]" *Id.*

Turning to Maryland cases, we noted that Maryland, like other states, had adopted the "reasonableness of use" rule, which "involv[ed] a balance of benefit and harm." *Id.* Recognizing that in Maryland, a property owner cannot, "with impunity," artificially

21

increase or concentrate the natural flow of water, we explained that although the defendants had the right to clear the property for development, "it was entirely foreseeable that the removal of all ground cover might increase the run-off and cause damage to the lower owners," and therefore, "the upper owners were under a duty to use reasonable precautions against harm." *Id.* Reviewing the record, we noted that the defendants had notice of the increased flow but took no steps to correct the condition, "which continued unabated with every rain." *Id.* at 547. We further observed that a number of witnesses testified that the mud that flowed onto the plaintiffs' property was traceable to the development activities on the defendants' property. *Id.* Based upon the record, we concluded that there was "legally sufficient evidence" to generate a jury question "on the issue of whether the defendants took reasonable precautions against injury under all the circumstances." *Id.* at 548.

This Court's most recent comprehensive discussion of private nuisance—*Wietzke v. Chesapeake Conference Association*, 421 Md. 355 (2011)—similarly involved claims of increased surface water flow. We discuss that case below.

### b.  Intrusion Cases Involving Sewer Operations

Our case law is clear that an operator of a public sewer system may be liable for private nuisance where the system is operated in a manner that creates continuous and unreasonable intrusions onto a plaintiff's use and enjoyment of his or her land. *See Taylor v. Mayor & City Council of Balt.*, 130 Md. 133, 148 (1917); *CAE-Link*, 330 Md. at 129.

In *Taylor*, a property owner sued the City for damages arising from the operation of the Baltimore City sewer system. 130 Md. at 134. The plaintiff's property, which had

been improved with a hotel, dancing pavilion, dining pavilion, and a dwelling house, was located approximately 1,500 feet from the City's sewage disposal plant. *Id.* at 135. Although the plaintiff presented no evidence of negligence in connection with the plant's operation, she did present evidence that the plant's operation caused "nauseating," "unbearable" odors, as well as "swarms" of gnats that invaded the plaintiff's property and intruded into the food she served. *Id.* at 136. Patrons who dined on the plaintiff's property became nauseated. *Id.* Windows were required to be closed, which interfered with the guests' ability to sleep. *Id.* Conditions were at their worst in the summer, which was the season in which the plaintiff had the most patrons. *Id.* As a result of the plant's operation, the plaintiff lost patrons. *Id.* She presented expert testimony demonstrating that the value of her property depreciated because of the plant's ongoing operations. *Id.* The issue presented was whether the City was liable for damages sustained by reason of the plant's operation. *Id.* at 137. The Court noted the "decided weight of authority" that holds a municipality liable for its drains and sewers if it "constructs or maintains them as to amount to a nuisance." *Id.* at 146. The Court quoted McQuillin's The Law of Municipal Corporations for the following proposition:

> A municipality has no more right to create a nuisance to the injury of another than has an individual, and hence where a sewer outlet is a private nuisance, damages are recoverable. Where a sewer is maintained by a municipal corporation so as to discharge sewerage and filth upon private property, or to emit offensive odors, creating an unsanitary and dangerous condition interfering with the safe and comfortable enjoyment of such property so as to impair its value, the municipality will be liable.

*Id.* at 147 (quoting § 2699 of 6 McQuillin: The Law of Municipal Corporations). The Court concluded that there was sufficient evidence to show that the City's operation of the

23

plant constituted a private nuisance, and therefore, the case should have been submitted to a jury. *Id.* at 149.

We turn to two continuous intrusion cases upon which the parties heavily rely to support their respective arguments—one in the context of a sewer sludge composting operation that produced ongoing noxious odors, *Washington Suburban Sanitary Commission v. CAE-Link Corporation,* 330 Md. 115 (1993), and another in the context of allegations of increased surface water flow, *Wietzke v. Chesapeake Conference Association,* 421 Md. 355 (2011). The Abels contend that this Court established a strict liability standard for private nuisance in *CAE-Link* and that the Appellate Court correctly relied upon that case in affirming the circuit court's judgment. Specifically, in rejecting the City's contention that private nuisance liability requires a finding of wrongful conduct on the part of the defendant, the Appellate Court stated that private nuisance liability is determined "by the injury caused by the condition and not by the conduct of the party creating the condition." *Abel*, 2025 WL 829733 at *3 (citing *CAE-Link*, 330 Md. at 140–42). For its part, the City asserts that the Abels and the Appellate Court misinterpret our discussion of strict liability in the context of private nuisance liability and point out that in *Wietzke*, we clarified—and expressly rejected—the Abels' and the Appellate Court's interpretation of *CAE-Link*. As we explain below, we agree with the City.

### c. Cases Discussing Strict Liability in the Private Nuisance Context

In *Washington Suburban Sanitary Commission v. CAE-Link Corporation*, 330 Md. 115, 119 (1993), we considered, among other things, whether the operator of a sewage sludge composting facility was "strictly liable for nuisance as a result of its construction,

24

and operation, of a sewage sludge composting facility pursuant to federal court orders." (Footnote omitted). The composting operation in question had its genesis in federal litigation to rectify an environmental crisis at a sewage treatment plant. *Id.* at 119–20. As a result of a federal court consent decree, the Washington Suburban Sanitary Commission (the "Commission") was required to acquire land and obtain necessary permits to construct and operate a sewage sludge facility. *Id.*

As part of its day-to-day operations, the Commission received shipments of sewage sludge, mixed the sludge with wood chips, divided the mixture into composting piles, and essentially let the piles ferment for 51 days. *Id.* at 119 n.2 (pointing to *Electro-Nucleonics, Inc. v. Wash. Suburban Sanitary Comm'n*, 315 Md. 361, 378 (1989) "for a more complete description of the operation"). Although the Commission utilized a "vacuum blower" system to control the smells emitted, the sewage facility created a radius of noxious odors which could be detected on nearby properties. *Electro-Nucleonics*, 315 Md. at 378.

The question before us was whether negligence had to be proven in order to submit a private nuisance claim to the jury related to the ongoing fumes that permeated the surrounding properties arising from the plant's operation. *CAE-Link*, 330 Md. at 123–24. The issue was generated by the circuit court's grant of partial summary judgment on the affected landowner's nuisance claim in which the trial court ruled that the plaintiffs were required to show that the Commission had negligently operated the sewer sludge facility. *Id.* at 122–23.

At trial, the affected landowners failed to establish a prima facie showing of negligence, and the trial court granted the Commission's motion for judgment. *Id.* at 122.

The issue before us was whether the landowners had to establish negligence to maintain a private nuisance action. *Id.* at 123. We started our analysis by citing to several cases from this Court, as well as cases from the United States Supreme Court, *id.* at 124–25 (collecting cases), in which plaintiffs had established a private nuisance for defendant's lawful conduct that "interferes with the reasonable and comfortable enjoyment by another of his [or her] property," *id.* at 125 (quoting *Meadowbrook Swimming Club*, 173 Md. at 645). All the cases involved conduct of the unreasonable continuous intrusion variety—that is, cases in which the defendant was engaging in lawful conduct that created a continuous or recurring interference with the plaintiff's use and enjoyment of land that would be offensive and inconvenient to an ordinary person. *Id.* Against the backdrop of these cases, we held that a nuisance claim in Maryland did not depend upon proof of negligence of an offending landowner:

> Maryland has long adhered to the rule that proof of nuisance focuses not on the possible negligence of the defendant but on whether there has been unreasonable interference with the plaintiff's use and enjoyment of his or her property. To prove the existence of a nuisance, therefore, the complained of interference must cause actual physical discomfort and annoyance to those of ordinary sensibilities, tastes and habits; it must interfere seriously with the ordinary comfort and enjoyment of the property.

*Id.* at 126 (citations omitted).

With these nuisance concepts in mind, we started the next section of our opinion by noting that the Commission "conceded that, in Maryland, nuisance is a matter of strict liability and that liability for nuisance may arise even when there is compliance with applicable laws and regulations or where the offending instrumentality is authorized or permitted (as opposed to mandated) by state statute." *Id.* (citation modified). We examined

26

the Commission's argument that "strict liability for nuisance" was "inapplicable" because the Commission's actions were not voluntarily undertaken, but instead were undertaken pursuant to a federal district court order requiring it "to build and operate a specific type of sludge composting facility, at a specific location and by a specific date." *Id.* at 126–27.

We rejected the Commission's argument that a private nuisance claim could not be maintained because the sludge facility was constructed pursuant to a court order. *Id.* at 127–29. First, we noted that, under our case law, the creation of a private nuisance "does not necessarily presuppose negligence but may arise from an unlawful act." *Id.* at 128 (quoting *Toy v. Atl. Gulf & Pac. Co.*, 176 Md. 197, 214 (1939) (emphasis omitted)).

Second, we noted that the instant case was "more closely akin to" *Taylor v. Mayor & City Council of Baltimore*, 130 Md. 133 (1917). *Id.* at 128. We described the facts of that case in which the City erected a sewage disposal plant 1,500 feet from the plaintiff's property on which a hotel and a dance and a dining pavilion were located. *Id.* We explained that we framed the issue as being whether a municipal corporation could be "liable under the facts and circumstances" "which would amount to a nuisance if done by a private corporation, or individuals—even if done by legislative authority." *Id.* (quoting *Taylor*, 130 Md. at 143). We cited our holding in *Taylor* "that the City could be held liable for nuisance even though the construction of the sewage disposal plant did not result in a taking of plaintiff's property and was done pursuant to State authority." *Id.* at 129 (citing *Taylor*, 130 Md. at 142–43).

Third, we cited two United States Supreme Court cases—*Baltimore & Potomac Railroad Company v. Fifth Baptist Church*, 108 U.S. 317 (1883) and *Richards v.*

*Washington Terminal Company*, 233 U.S. 546 (1914)—both of which rejected railroad companies' claims of immunity from private nuisance suits arising from ongoing gases and smoke where the construction of the railroad was legislatively authorized, and in the case of *Richards*, the locale was established pursuant to law and not voluntarily chosen by the defendant. *CAE-Link*, 330 Md. at 129–30 (citing *Richards*, 233 U.S. at 557).

Relying on these cases, we noted that, although the district court ordered the Commission to build a sewage sludge composting facility in Montgomery County, it did not select the site, nor did it mandate how construction would proceed. *Id.* at 131. We stated that the Commission "created the nuisance[,]" and therefore, "[a] strict liability standard should apply." *Id.* We concluded that the district court's consent decree did not "sanction or legalize any acts or any use of property that will create a private nuisance which will injuriously affect the property of another." *Id*. at 132 (quoting *Taylor*, 130 Md. at 145).

In *Wietzke v. Chesapeake Conference Association*, 421 Md. 355, 382–83 (2011), we addressed a dispute about what we meant in *CAE-Link* in referring to strict liability in discussing a private nuisance claim. Specifically, the plaintiffs in *Wietzke* argued that *CAE-Link* established a strict liability standard for a private nuisance claim in the sense that a trier of fact must consider only the harm caused to the plaintiff and not the offending landowner's conduct.

In that case, the plaintiffs brought a suit with claims of negligence, private nuisance, and trespass against an adjoining landowner, alleging that the landowner's construction of a new parking lot in connection with its church caused an increase in surface water over the plaintiff's property, resulting in "repeated and continued flooding." *Id.* at 358 (citation

28

modified). At trial, the following evidence was presented to a jury. *Id.* at 360. In connection with the church's construction activity, it developed a stormwater runoff and sediment control strategy, which was intended to control the flow of surface water from the church's property. *Id.* at 361. The church also constructed a stormwater pond, which was designed to collect excess water runoff from its property and release it in a slow, controlled manner. *Id.* During construction, the county code office issued the church two violation notices for being in non-compliance with certain county ordinances related to stormwater and sediment control. *Id.* at 361–62.

The plaintiffs testified that they had experienced three major flooding events in their basement, which coincided with the period in which the church had received violation notices. *Id.* at 363. The plaintiffs also testified that they had experienced between 40 and 50 additional minor flooding events in their basement during the same time period. *Id.* at 363–64. Due to the flooding, the plaintiffs testified that they had ceased using their basement entirely. *Id.* at 364. The plaintiffs did not produce any expert testimony. *Id.* In addition to the plaintiffs' testimony, two neighbors gave testimony that, based on their perception, water appeared to flow toward the plaintiffs' property from the church's property, and one of the neighbors presented video footage of a significant flooding event of the plaintiffs' house, which they asserted came from the church property. *Id.* The plaintiffs also called the church's contractor, who oversaw the construction. *Id.* The contractor admitted that the construction project increased the runoff from the church's property and stated that the church constructed a stormwater pond to control it. *Id.* The church's contractor also acknowledged that the church had considered whether it would

have been beneficial to utilize sandbags during a heavy rainfall; however, before action was taken, the rain had stopped. *Id.*

At the close of the plaintiffs' case, the circuit court granted the church's motion for judgment on the negligence claim. *Id.* The church presented "a case rife with expert testimony." *Id.* at 365. This testimony included the county inspector, who issued the notices and, testifying as a stormwater expert, opined that the violations would not have increased the surface flow from the church's property onto the plaintiffs' property. *Id.* at 365–66. The church's experts also testified that (1) the construction of the new parking lot did not cause water to flow where it was not previously flowing, and (2) the surface water flowing onto the plaintiffs' property most likely originated from multiple sources, but that it was impossible to determine which properties contributed without a detailed runoff study. *Id.* at 366.

At the close of the defendant's case, the parties met with the trial judge for two days regarding their requested jury instructions. *Id.* The plaintiffs requested several jury instructions related to their nuisance claim, one of which would have advised the jury that the church was liable if the plaintiffs' comfortable enjoyment of their property had been interfered with, without more. *Id.* The plaintiffs' proposed jury instruction based on that understanding of strict liability read as follows:

> Nuisance is a strict liability cause of action. This means that it does not matter whether or not the nuisance was the result of illegal or negligent conduct. Even if a business is lawful and conducted in the most approved method, it is still a nuisance if it interferes with the comfortable enjoyment by another of his property.

*Id.* Ultimately, the trial judge declined to give the plaintiffs' requested jury instructions, opting instead to instruct the jury in accordance with Sections 20:1, 20:2, and 20:4 of the Maryland Civil Pattern Jury Instructions (4th ed., 2008 Supp.), with some portions omitted.[7] *Id.* at 366–67. The jury returned a verdict in favor of the church on both the private nuisance and trespass counts. *Id.* at 369.

---

[7] The jury instruction that the trial court gave in *Wietzke* read as follows:

A nuisance is any unreasonable conduct which causes real, substantial, and unreasonable damage to, or interference with, another person's ordinary use and enjoyment of his or her property.

Conduct is unreasonable if it is prohibited by law or violated regulations which were adopted to control the use of property, or it is not suitable for the nature of the area and the use being made of other property in the area, or it causes interference with the other person's use and enjoyment and the interference could have been reduced or eliminated without too much hardship or too much expense.

In determining whether the conduct was unreasonable, you should consider whether it was the kind of conduct an ordinary person would expect might interfere with the use and enjoyment of another's property or cause real and substantial injury to another person's health or comfort. You should also consider the right of both parties to make a reasonable use and enjoyment of their property. The plaintiff's right to be free from interference with his or her use and enjoyment should be balanced against defendant's right to use his or her property. And the plaintiff must expect to endure some inconvenience or discomfort which results from the defendant's use of his or her property.

In determining what reasonable amount of interference, inconvenience, or discomfort the plaintiff should be expected to tolerate you should consider the right of the defendant to his or her property or to conduct his or her affairs in a reasonable manner. The extent of interference which would result from the defendant's reasonable use of his or her property or conduct of his or her affairs, the circumstances under which the interference occurred, the nature

31

After the Appellate Court affirmed the circuit court judgment, we granted certiorari to consider, among other things, (1) whether the plaintiffs were "improperly denied a jury instruction which reflected the strict liability law of nuisance in Maryland when the instructions given by the court failed to address strict liability," and (2) whether the Maryland Pattern Jury Instructions 20:1 and 20:2, "which fail to include strict liability, but instead required a finding of 'unreasonable conduct,' conflict with Maryland nuisance law." *Id.* at 369 n.7 (citation modified).

Examining our case law, we determined that the jury instruction given was a correct exposition of the law and that the trial judge did not err in denying the plaintiffs' requested instruction based on their theory of strict liability. *Id.* at 381. In so concluding, we discussed our private nuisance jurisprudence. *Id.* at 373–81. Specifically, we noted that, in *Short v. Baltimore City Passenger Railroad Company*, 50 Md. 73 (1878), "we explained that the nuisance inquiry necessarily involved the balancing of conflicting property rights, and to that end, a determination of whether the offending landowner's use of its own

---

of the area in which the real property is located, and the uses being made of the other property in the area.

A person who creates or continues a nuisance is responsible for the injury or damage caused to others by the nuisance.

The defendants in this case have asserted that the natural flow of water in the neighborhood leads to plaintiffs' property. You are instructed that even if the natural flow of water in the neighborhood leads to plaintiffs' property, the defendants are liable if they created a change in that water flow which created a nuisance to the [plaintiffs].

*Wietzke v. Chesapeake Conf. Ass'n*, 421 Md. 355, 368–69 (2011).

property was 'reasonable, usual, and proper[.]'" *Weitzke*, 421 Md. at 376 (quoting *Short*, 50 Md. at 81–82). We observed that in *Short*, we determined that the trial court had correctly admonished the jury to consider the reasonableness of the railroad's use of its property. *Id.* at 377.

We then noted that "[i]n other late nineteenth century cases, we had occasion to flirt with discussing only the unreasonableness of the interference caused to the affected landowner's use and enjoyment as a basis for relief[.]" *Id.* We observed, however, that we "never expressly adopted a view consistent with that doctrine nor deflected one that balanced reasonable use versus unreasonable interference as adopted in *Short*." *Id.* We pointed out that our opinion in *Susquehanna Fertilizer Company v. Malone*, 73 Md. 268 (1890) "embrace[d] the balance of use against interference test." *Id.* at 378. Moreover, we stated that "[i]n more modern nuisance in-fact cases, we also have balanced the competing rights of landowners." *Id.* We reviewed those cases at length. *Id.* at 378–81; *see Evans v. Burruss*, 401 Md. 586, 610 (2007) (characterizing the doctrine of private nuisance as one which "balance[d] the conflicting rights of landowners"); *Slaird v. Klewers*, 260 Md. 2, 10 (1970) (affirming a trial court's dismissal of a private nuisance claim and determining that the trial court had appropriately considered the reasonableness of the offending landowner's use and development of their land); *Battisto*, 210 Md. at 546 (framing our analysis by establishing that, due to the competing property interests at stake, a court in equity was obliged to balance the benefit versus the harm caused by an offending landowner's use of its property, leaving the question of whether the offending landowner had used his or her property reasonably to the jury).

33

Based upon our private nuisance case law, we concluded that the "trial judge . . . properly instructed the jury that they should consider the reasonableness of the offending landowner's use of its property, the locality of the affected landowner's property, the surrounding circumstances, and the substantiality of the interference with the [plaintiffs'] use and enjoyment of their property." *Wietzke*, 421 Md. at 381.

We noted that the plaintiffs asserted that, "[i]n order to obviate our holding[]" in *CAE-Link*, we "substantially revised" Maryland's private nuisance law by prohibiting a trier of fact from considering the reasonableness of an offending landowner's conduct in determining whether a plaintiff established a private nuisance claim. *Id.* at 381–82. After discussing the facts of that case, we rejected the plaintiffs' assertion that *CAE-Link* effected such a change in our private nuisance law. *Id.* at 382–83. We explained that, in *CAE-Link*, "because the creation of a nuisance resulted in strict liability, making out a *prima facie* case of nuisance did not require a showing that the Commission had been negligent." *Id.* at 382. "In so doing," we explained, "we did not dramatically revise our nuisance jurisprudence," as the plaintiffs had argued, "such that the finding of a private nuisance no longer involves a balance of the competing property interests at stake." *Id.* at 382–83. In other words, a private nuisance is a strict liability claim in the sense that once a nuisance is established, liability follows strictly, without the necessity of showing negligence. It is not a strict liability claim in the sense the plaintiffs had argued, meaning without an analysis of whether the defendant's conduct constituted an unreasonable interference.

Thus, we determined that the trial judge correctly instructed the jury on the concept of "strict liability" in the context of private nuisance claims with the following instruction:

34

> A person who creates or continues a nuisance is responsible for the injury or damage caused to others by the nuisance.
>
> The [church has] asserted that the natural flow of water in the neighborhood leads to [the plaintiffs'] property. You are instructed that even if the natural flow of water in the neighborhood leads to [the plaintiffs'] property, the [church is] liable if they created a change in that water flow which created a nuisance to the [plaintiffs].

*Id.* at 383.

We agree with our conclusion in *Wietzke* that *CAE-Link* did not alter our existing private nuisance jurisprudence by imposing a strict liability standard in which a trier of fact considers only the significance of the interference with the plaintiff's use and enjoyment of his or her property without regard to the nature of the defendant's conduct that causes the invasion. Within the context of *CAE-Link*—in which it was undisputed that the Commission's operation of its sewer sludge facility was causing a continuing and significant interference with nearby properties in the form of unreasonable offensive smells—this Court correctly explained that (1) a finding of negligence is not required to establish private nuisance, and that liability may arise from another type of "unlawful act," and (2) the Commission was not immune from liability for maintaining a private nuisance simply because the facility was constructed pursuant to the district court's consent decree. *CAE-Link*, 330 Md. at 126–29. In other words, *once it is established* that a defendant's wrongful conduct is creating a private nuisance by causing a significant interference with the use and enjoyment of a plaintiff's land, the defendant is strictly liable for damages resulting therefrom. Put another way, once a nuisance is established, the plaintiff does not have to prove a more traditional, fault-based type of conduct, such as negligence. We

reaffirm our holding in *Wietzke* that *CAE-Link* did not alter our private nuisance jurisprudence by eliminating the requirement that a trier of fact consider the *nature of the defendant's conduct* as part of the determination of whether the defendant is liable for private nuisance. *Wietzke*, 421 Md. at 382–83.

### B. Maryland's Private Nuisance Common Law Requires Establishing Wrongful Conduct by the Defendant in the Sense that It Violates an Existing Legal Duty or Creates a Continuous and Unreasonable Intrusion

Based upon our review of our private nuisance common law, we distill the following principles.

*First,* our case law clearly requires that, to establish a private nuisance, a trier of fact must consider not only the significance of the invasion of the plaintiff's interference with the use and enjoyment of his or her property, but also the nature of the defendant's conduct that causes the invasion. *Wietzke*, 421 Md. at 377–79.

*Second,* to establish private nuisance, the intrusion onto the plaintiff's use and enjoyment of his or her property must arise from *wrongful* conduct. *Toy*, 178 Md. at 215 ("In order to constitute a nuisance at law[,] it is required that the *wrongful act* of the defendant, its agents or servants[,] be shown, as proof of damage, loss or inconvenience suffered is not enough to maintain an action." (emphasis added)); *CAE-Link*, 330 Md. at 128 (reiterating that the creation of a private nuisance "does not necessarily presuppose negligence but may arise from an unlawful act[]" (quoting *Toy*, 176 Md. at 214) (emphasis omitted)).

36

*Third*, a private nuisance claim may arise from more than one type of conduct.  For example, it may arise from conduct that is negligent, reckless, or abnormally dangerous.[8] *See e.g.*, *Albright*, 433 Md. at 319–20 (upholding a claim for private nuisance arising from a series of negligent acts involving an underground gasoline tank); *Short*, 50 Md. at 83–84 (upholding a private nuisance claim against a railroad company that negligently placed snow in a gutter causing the obstruction of the natural flow of water into the street).  A private nuisance claim may also arise from a defendant's conduct that is considered wrongful because it creates a continuous or recurring and unreasonable intrusion on a plaintiff's use and enjoyment of his or her property that would be offensive and inconvenient to an ordinary person.  *See Wynkoop*, 159 Md. at 202 (explaining that "nuisance necessarily involves the idea of continuance[]"); *see also Echard v. Kraft*, 159 Md. App. 110, 119 (2004) (explaining "that for there to be a nuisance there must be a continuousness or recurrence of the things, facts, or acts, which constitute the nuisance" (citation modified)).  This Court has upheld private nuisance claims involving conduct of the unreasonable continuous intrusion variety in the following cases: *CAE-Link*, 330 Md. 115; *Corbi*, 268 Md. 459; *Bishop Processing Co.*, 213 Md. 465; *Battisto*, 210 Md. 542; *Gorman v. Sabo*, 210 Md. 155 (1956); *Fox*, 195 Md. 650; *Meadowbrook Swimming Club*,

---

[8] It is worth mentioning that no one is suggesting that the operation of a municipal sewer system is an abnormally dangerous activity for which strict liability would apply.  In *Toms v. Calvary Assembly of God, Inc.*, 446 Md. 543, 559–60 (2016), we applied the six-factor test set forth in § 520 of the Second Restatement for determining when an activity is abnormally dangerous, concluding that putting on a fireworks show next to a dairy farm did not constitute an abnormally dangerous activity that would warrant the imposition of strict liability.

173 Md. 641; *Albrecht*, 157 Md. 389; *Taylor*, 130 Md. 133; *Balt. & S.P.R. Co.*, 87 Md. 224; *Susquehanna Fertilizer Co.*, 73 Md. 268; *Hitchins*, 68 Md. 100; *Woodyear*, 57 Md. 1; *Dittman*, 50 Md. 516. We have also described continuousness in the context of private nuisance surface water cases. *See, e.g.*, *Battisto*, 210 Md. at 545–46.

*Fourth*, we are not aware of any Maryland cases in which a defendant has been held liable for a private nuisance where conduct that is not negligent, reckless, or abnormally dangerous occurs on a defendant's land and causes a single invasion of a plaintiff's use and enjoyment of his or her property. A survey of cases in which a defendant's conduct that is not negligent, reckless, or abnormally dangerous, and is determined to be a private nuisance, all involve an invasion that is continuous or recurring.

*Fifth*, we agree with our conclusion in *Wietzke* that *CAE-Link* did not alter our existing private nuisance jurisprudence by imposing a strict liability standard in which a trier of fact considers only the significance of the interference with the plaintiff's use and enjoyment of his or her property without regard to the nature of the defendant's conduct that causes the invasion. Once it is established that a defendant's wrongful conduct is creating a private nuisance by causing a significant interference with the use and enjoyment of a plaintiff's land, the defendant is strictly liable for damages resulting therefrom.

### C. Taking the Evidence in the Light Most Favorable to the Plaintiffs, There Is No Evidence of Wrongful Conduct by the City To Establish Private Nuisance

Viewing the evidence in the light most favorable to the Abels, we determine that there is no evidence of wrongful conduct by the City that satisfies the requirement for liability for private nuisance. The jury found in the City's favor on the Abels' negligence claims

associated with the 2019 backup. The Abels did not assert that the City engaged in reckless behavior or that the operation of a municipal sewer system constitutes abnormally dangerous conduct. And, of course, there is no evidence that the City acted for the purpose of causing a sewer backup on the Abels' property.

We therefore must determine whether there was evidence that the City's non-negligent conduct was wrongful because it caused a continuous or recurring and unreasonable invasion. The court instructed the jury that Maryland's private nuisance law requires a continuous and unreasonable intrusion by the following portion of the jury instruction: "Nuisance connotes a continuance of the complaining conduct, and a single act not likely to be repeated will not sustain a suit in nuisance." We determine that, taking the evidence in the light most favorable to the Abels, the evidence was insufficient as a matter of law to generate a jury question of whether there was a continuous or recurring intrusion.

It is undisputed that the blockage that caused the Abels' backup on December 28, 2019, came from the City's main sewer line—into which the lateral lines that serve individual properties flow. After the Abels noticed water trickling around their basement toilet, they put down towels and called a plumber. The plumber came out but did not fix the issue. The Abels left for the day, hoping the issue would resolve on its own. When they returned, at approximately 9:00 p.m., the water had spread further, the smell was like "the hippo house at the zoo," and the basement bathtub "looked like it had mud in it" that was "maybe four, five inches" deep. It was at this time that the Abels first called the City's nonemergency service number to alert the City about the problem. In other words, a

significant intrusion of sewage had invaded the Abels' use and enjoyment of their property prior to their initial call to the City for assistance.

The Abels' next call to the City's 311 nonemergency number was at 10:00 a.m. the next morning. Ms. Abel placed a third call to the 311 number at some point after noon, but this time, she asked for a supervisor, and their discussion led the City's supervisor to escalate their case's priority. The City's crew with a sewer cleaning truck arrived by 2:30 p.m., and the City was able to stop the water from backing up approximately 15 minutes after arriving.

Viewing the evidence in the light most favorable to the Abels, we determine that the City's non-negligent conduct did not cause a continuous invasion of the sewage into the Abels' basement. Ms. Abel called the City's nonemergency number at 9:00 p.m. to report a sewer back up. By that time, four or five inches of sewage had accumulated during the day and into the evening during hours in which the Abels were not home. We further determine that a single one-day backup over the course of 17 hours[9] does not constitute a "continuous and unreasonable" invasion for which the City may be held liable for private nuisance under our case law. The facts of this case are different from *Taylor*, 130 Md. 133, and *CAE-Link*, 330

---

[9] Before this Court, the Abels attempt to argue that a sewer backup that occurred in 2022 satisfied the continuous or recurring condition. The Abels did not argue that point below, nor did they present evidence to the jury to establish that these events were related. The 2022 incident included evidence of a sewer jet entering the home due to the negligent use of a sewer cleaning pressure hose truck. The 2022 backup arose from an unrelated and different set of facts. In the instructions and on the verdict sheet, the jury was expressly asked, "[d]o you find, by a preponderance of the evidence, that the [City] committed a nuisance on *December 28-29, 2019.*" (Emphasis added). The only question before this Court is whether the facts in the record, concerning the 2019 backup, could support a finding that the City was liable for private nuisance.

Md. 115. In those cases, the defendants were operating their systems in a manner that caused ongoing and continuous invasions in the form of odors. Here, there was no continuous invasion.

Crediting the entirety of the Abels' expert's testimony that an upstream blockage on December 23, 2019—which "had been removed"—caused the intrusion into the Abels' home five days later because the City should have undertaken additional cleaning to prevent future backups, there is no evidence of conduct that caused a continuous intrusion into the Abels' home.[10] Because there was insufficient evidence as a matter of law to generate a jury question as to whether there was a continuous intrusion into the Abels' home, the circuit court erred in denying the City's motion for judgment.

We determine that a single backup arising from a blockage in the City's main sewer line that was not caused by any negligent act of the City does not constitute an invasion of a continuous nature under our private nuisance jurisprudence. Viewing the evidence in the

---

[10] The City is not an absolute insurer for any damage arising from a user's connection to its system. To hold the City liable for private nuisance for *any invasion* that is not caused by intentional and unreasonable, negligent, reckless, or abnormally dangerous activity by the City in connection with its operation of a city sewer system would expose the City to liability for unlimited and unavoidable intrusions caused by *any user of the system*, who, in turn, causes harm to any property connected to the system. The Baltimore City sewer system services approximately 1.5 million people in Baltimore City, Baltimore County, and neighboring counties with a total system capacity of approximately 253 million gallons per day. *Water & Wastewater Supply & Capacity*, City of Baltimore: Dep't of Planning (last visited May 31, 2026), https://perma.cc/X3N9-3G6A. Sewer blockages frequently arise from third party users' improper disposal of rags, grease, and debris into the system without any fault of or knowledge by the system's operator. *Id.* The City attempts to raise the awareness among its users as to proper disposal practices in order to prevent backups. *See, e.g.*, *Clean Drain Campaign*, City of Baltimore: Dep't of Pub. Works (last visited May 31, 2026), https://perma.cc/J8EQ-XX9L.

41

light most favorable to the Abels, there is no evidence that the City engaged in a wrongful act that caused the damage to the Abels' property.

## V

## Conclusion

In conclusion, we hold as follows:

Under Maryland common law, liability for private nuisance is established by considering not only the significance of the invasion of the plaintiff's reasonable use and enjoyment of his or her land but also the reasonableness of the defendant's conduct or use of his or her property that causes the invasion. When considering the reasonableness of the defendant's conduct that causes the invasion, Maryland's private nuisance common law requires that the defendant engage in wrongful conduct. A private nuisance claim may arise from more than one type of conduct. For example, it may arise from conduct that is negligent, reckless, or abnormally dangerous. Where the defendant's conduct does not involve conduct that is not otherwise negligent, reckless, or abnormally dangerous, the defendant's conduct may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion onto a plaintiff's use and enjoyment of his or her property. Once it is established that a defendant's wrongful conduct is creating a private nuisance by causing a significant and unreasonable interference with the use and enjoyment of the plaintiff's land, the defendant is strictly liable for damages resulting therefrom.

In this case, viewing the evidence in the light most favorable to the Abels, there was insufficient evidence as a matter of law that the City engaged in wrongful conduct that caused the invasion of the sewage into their basement. The jury found in favor of the City

42

on the Abels' negligence claim arising from the 2019 backup, and there was no allegation that the City engaged in reckless or abnormally dangerous conduct.  Moreover, there was no evidence upon which a jury could find that any conduct by the City caused a continuous or recurring invasion of the Abels' property.  The City's response to a single backup after receiving notice of an intrusion did not cause a continuous invasion of the Abels' property that would subject the City to private nuisance liability under Maryland law.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED.  CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR ENTRY OF JUDGMENT IN FAVOR OF PETITIONER.  COSTS IN THE APPELLATE COURT OF MARYLAND AND THIS COURT TO BE PAID BY RESPONDENTS.**

Circuit Court for Baltimore City
Case No.: 24-C-22-005128

Argued: February 5, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 26

September Term, 2025

_____

MAYOR AND CITY COUNCIL OF
BALTIMORE

v.

THERESA ABEL, ET AL.

_____

Fader, C.J.
Watts
Booth
Biran
Gould
Eaves
Killough,

JJ.

_____

Dissenting Opinion by Watts, J., which
Killough, J., joins.

_____

Filed:  July 29, 2026

Respectfully I dissent. I disagree with the Majority's holding that a plaintiff must prove a defendant's conduct was "wrongful," which raises the standard of proof in private nuisance cases. Maj. Slip Op. at 36-38. There are two aspects of the majority opinion with which I disagree.

First, although I agree that a trier of fact must consider the significance of the invasion on the plaintiff's use and enjoyment of the plaintiff's property and the nature of the defendant's conduct that causes the invasion, I disagree that "to establish private nuisance, the intrusion onto the plaintiff's use and enjoyment of his or her property must arise from *wrongful* conduct." Maj. Slip Op. at 36 (citations omitted). With this holding, the Majority improperly raises the standard of proof required in private nuisance cases. Although a private nuisance *may* arise from wrongful or illegal conduct, it is not required that to establish private nuisance liability a plaintiff must prove "wrongful conduct" on the part of the defendant.

On brief, the City contends that to constitute a private nuisance, a defendant's use of land must be unreasonable or consist of a wrongful act and characterizes nuisances as resulting from intentional and negligent behavior. The City argues: "The list of Maryland cases where nuisances resulted from this kind of intentional unreasonable behavior is long[,]" and "[t]he second category of nuisances – those resulting from unintentional intrusions arising from negligent (and therefore unreasonable) use of land – is far less common, perhaps because negligent conduct is actionable on its own right." (Citation modified). The City contends that this is the nature of conduct that, according to it, has resulted in courts concluding for purposes of private nuisance liability that a defendant's

use of the defendant's land was unreasonable or consisted of a wrongful act. Contrary to the Majority's holding, the City does not contend that merely causing a continuing or recurring intrusion on another's property constitutes "wrongful conduct." Maj. Slip Op. at 42.

The City quotes from section 822 of Second Restatement and uses its provisions to make the point that a defendant's conduct must constitute "a wrongful act or an unreasonable use of land" and that, according to the City, its conduct in this case does not satisfy that standard because it was not intentional or negligent. The City's argument that wrongful conduct or a wrongful act is part of private nuisance law is, at bottom, a request to raise the standard of proof.

Our case law concerning private nuisance does not require that there be a wrongful act or wrongful conduct by the defendant. Rather, our case law requires that the trier of fact consider the reasonableness of the defendant's use of the defendant's property, not whether the defendant engaged in wrongful conduct. See, e.g., Wietzke v. Chesapeake Conference Ass'n, 421 Md. 355, 381, 26 A.3d 931, 947 (2011) ("In the present surface water case, the trial judge, in accordance with our jurisprudence, properly instructed the jury that they should consider the reasonableness of the offending landowner's use of its property, the locality of the affected landowner's property, the surrounding circumstances, and the substantiality of the interference with the Wietzkes' use and enjoyment of their property."). To the extent that the Majority interprets the City's argument to be a request that we adopt a requirement that to establish private nuisance liability a plaintiff must prove that an intrusion onto the plaintiff's property that interferes with the use and enjoyment of

- 2 -

property arose from a defendant's wrongful conduct, the Majority has raised the standard

of proof for the tort of private nuisance.[1] See Maj. Slip Op. at 36.

In reaching this conclusion the Majority relies primarily on a 1939 case involving a

negligence action—Toy v. Atl. Gulf & Pac. Co., 176 Md. 197, 4 A.2d 757 (1939)—which

it misinterprets. In Exxon Mobil Corp. v. Albright, 433 Md. 303, 412, 71 A.3d 30, 96-97

(2013), we discussed the circumstances and holding in Toy, stating:

> [T]his Court considered whether a defendant could be held liable for
> negligence despite the absence of physical invasion of property. In *Toy*, the
> plaintiffs sought recovery for the loss of water access and use of a carp pond
> on their property resulting from obstruction of a navigable creek following
> dredging operations performed by the defendant. We noted that, because the
> destruction of the creek "greatly diminished in value the property of the
> Plaintiffs, it was the cause of a particular and special injury for which an
> action will lie," despite the lack of physical invasion of property owned by
> the plaintiffs. *Toy*, 176 Md. at 207, 4 A.2d at 763. Because plaintiffs had
> suffered damages as a result of the obstruction of the navigable creek—
> specifically, they could no longer access their property via boat, nor control
> the level of water necessary to sustain the carp in their pond—we determined
> that plaintiffs alleged a sufficient injury to land in order to recover, provided
> that they could establish a wrongful act on the part of the defendant. *Id.* at
> 207-08, 4 A.2d at 762-63.

---

[1]The Majority states: "In this case, the parties ask us to determine whether the tort of private nuisance is established under Maryland law by proving that *any* conduct on the defendant's land causes an unreasonable and substantial interference with the plaintiff's use and enjoyment of his or her property, or whether the interference must arise from wrongful conduct." Maj. Slip Op. at 14. This is not correct. The questions that this Court granted *certiorari* to answer do not involve a request from the City to determine whether the City's interference with the use and enjoyment of the Abels' property arose from "wrongful conduct." Rather, the City asked that the Court determine whether the reasonableness of the City's use of land should be determined solely by the significance of the disruption of the plaintiff's use of their land, whether an alleged continuous and recurrent element of private nuisance liability was satisfied, and whether the evidence was sufficient to establish nuisance.

(Citation modified). In Toy, 176 Md. at 208, 4 A.2d at 763, immediately after making that determination, we stated in no uncertain terms that "[t]he action brought is not in trespass, nor is it for nuisance, but for negligence." We explained: "The mere proof of particular and special damage is not enough to give a right of action. Unless the injury or wrongful act constituting or causing the damage co-exist, the essential for a recovery are not present. The mere happening of the accident does not show negligence." Id. at 208, 4 A.2d at 463. We concluded that the evidence did not demonstrate that there was a breach of contract or negligence and that the doctrine of res ipsa loquitur did not apply. See id. at 209-11, 4 A.2d at 763-64.

> Although the case did not involve an action for nuisance, we stated:
>
> If the defendant had caused the earth and debris to be cast into the channel opposite the shore of the plaintiffs, and so filled it that the plaintiffs' limited navigable access to their shore and dam had been materially affected or destroyed so that they had sustained damages which were so special and peculiar to their property as to make them substantially different from those suffered by the public generally, the plaintiffs would have a cause of action against the defendant on the theory of the unlawful creation of a private nuisance, since its existence does not necessarily presuppose negligence but may arise from an unlawful act. It has been seen that the defendant was not negligent, so the plaintiffs could not recover, unless there was testimony legally sufficient to establish that **some act** of the defendant had caused the filling and blocking of the channel. There is no such testimony.

Id. at 214, 4 A.2d at 766 (emphasis added). We discussed the testimony in the case and observed that there was no evidence the defendant committed an act or omission that contributed to the injury. See id. at 215-16, 4 A.2d at 766. In that context, we stated: "In order to constitute a nuisance at law it is required that the wrongful act of the defendant, its agents or servants be shown, as proof of damage, loss or inconvenience suffered is not

- 4 -

enough to maintain an action." Id. at 215, 4 A.2d at 766. Although phrased as requiring a wrongful act by the defendant, our statement referred to the need for the defendant to have committed any act that resulted in damage, and the statement was obviously *dicta* as Toy did not concern a nuisance action in the first place.

Nonetheless, the Majority establishes a new standard of proof for private nuisance liability requiring "wrongful conduct" by the defendant. Maj. Slip Op. at 42. The Majority states: "When considering the reasonableness of the defendant's conduct that causes the invasion, Maryland's private nuisance common law requires that the defendant engage in wrongful conduct." Maj. Slip Op. at 42. The Majority holds: "Where the defendant's conduct does not involve conduct that is not otherwise negligent, reckless, or abnormally dangerous, the defendant's conduct may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion onto a plaintiff's use and enjoyment of his or her property." Maj. Slip Op. at 42.

Because the Majority sets forth a new requirement that, to establish private nuisance liability, a plaintiff must prove that a defendant's use of land was the result of wrongful conduct, rather than reverse the judgment of the Appellate Court and remand the case with instruction that the Circuit Court for Baltimore City enter judgment in favor of the City, the fair and impartial outcome would be to reverse the judgment of the Appellate Court and remand with instructions that the circuit court vacate its judgment and conduct further proceedings consistent with the Majority's opinion. Whether the Majority will admit it or not, with its decision, it plainly has imposed new elements of proof for the tort of private nuisance. Where a new rule affecting civil liability is imposed by an appellate court and

- 5 -

the new rule changes the outcome of a case, vacating and remanding the case for consideration under the new standard is the appropriate and equitable remedy.[2]

Second, although it is accurate that a private nuisance claim "may arise from conduct that is negligent, reckless, or abnormally dangerous" or from conduct that creates a continuous or recurring and unreasonable intrusion on a plaintiff's use and enjoyment of the plaintiff's property, Maj. Slip Op. at 37, to the extent that the majority opinion can be read to require that a plaintiff has to prove negligence, recklessness, or abnormally dangerous activity, or a continuous and recurrent intrusion, such a requirement not only imposes a new standard of proof, but also a heightened one. Our case law makes clear that reasonableness of the defendant's use of land, or lack thereof, is the key in private nuisance liability, not that a plaintiff must prove that a defendant's conduct is wrongful, negligent, reckless, or abnormally dangerous. Conduct that is negligent, reckless, or abnormally dangerous would be deemed *per se* unreasonable. However, not all unreasonable conduct is negligent, reckless, or abnormally dangerous.

Just because the Majority states that it is "not aware of any Maryland cases in which a defendant has been held liable for a private nuisance where conduct that is not negligent, reckless, or abnormally dangerous occurs on a defendant's land and causes a single invasion of a plaintiff's use and enjoyment of his or her property[,]" Maj. Slip Op. at 38, does not mean that this is the standard of proof that a plaintiff in a private nuisance case must meet; rather, this is just an observation by the Majority about circumstances of cases

---

[2]In the absence of a remand, the appropriate outcome would be for the Majority to hold that its new standard shall apply prospectively.

which it reviewed. The Majority states: "A survey of cases in which a defendant's conduct that is not negligent, reckless, or abnormally dangerous, and is determined to be a private nuisance, all involve an invasion that is continuous or recurring." Maj. Slip Op. at 38. Reading the sentences together leads to the conclusion that the Majority is inferring that, to establish a private nuisance, the plaintiff must prove that the defendant's conduct is either negligent, reckless, or abnormally dangerous, or there must be a continuous or recurring invasion—which raises the standard of proof. The Majority has essentially established a definition of private nuisance that includes as an element that a defendant's conduct has to be either negligent, reckless, or abnormally dangerous and if not one of those three things, then there must be a continuous or recurring invasion. This goes well beyond the requirement in our case law that a court must consider whether a defendant's use of land was reasonable.

The Majority's holding is built on the false premise that our private nuisance jurisprudence has all along required a plaintiff to demonstrate that a defendant's interference with use and enjoyment of the plaintiff's land was negligent, reckless, or abnormally dangerous. In Wietzke, we set forth the definition of a strict liability standard for private nuisance and reaffirmed that private nuisance is a strict liability action.

In Wietzke, 421 Md. at 358-59, 26 A.3d at 933-34, a case in which the plaintiffs filed a private nuisance claim after the construction of a parking lot purportedly caused the "repeated and continued flooding" of their home, we considered whether the plaintiffs were improperly denied jury instructions related to their nuisance claim. (Citation modified). One of the plaintiffs requested a jury instruction stating that nuisance is a strict liability

cause of action. See id. at 366, 26 A.3d at 938. After the trial judge and counsel met over a two-day period to discuss the proposed instructions, the judge denied the plaintiffs' requested jury instructions, instead opting to instruct the jury in accordance with Sections 20:1, 20:2, and 20:4 of the Maryland Civil Pattern Jury Instructions (4th ed., 2008 Supp.). See id. at 367, 26 A.3d at 939. The trial judge's jury instructions involved advising the jury that a more comprehensive inquiry must be performed, in which the use of the defendant's property must be balanced against the right of the affected landowner to be free from interference:

> A nuisance is any unreasonable conduct which causes real, substantial, and unreasonable damage to, or interference with, another person's ordinary use and enjoyment of his or her property.
>
> Conduct is unreasonable if it is prohibited by law or violated regulations which were adopted to control the use of property, or it is not suitable for the nature of the area and the use being made of other property in the area, or it causes interference with the other person's use and enjoyment and the interference could have been reduced or eliminated without too much hardship or too much expense.
>
> In determining whether the conduct was unreasonable, you should consider whether it was the kind of conduct an ordinary person would expect might interfere with the use and enjoyment of another person's property or cause real and substantial injury to another person's health or comfort. You should also consider the right of both parties to make a reasonable use and enjoyment of their property. The plaintiff's right to be free from interference with his or her use and enjoyment should be balanced against defendant's right to use his or her property. And the plaintiff must expect to endure some inconvenience or discomfort which results from the defendant's reasonable use of his or her property.
>
> In determining what reasonable amount of interference, inconvenience, or discomfort the plaintiff should be expected to tolerate you should consider the right of the defendant to use his or her property or to conduct his or her affairs in a reasonable manner. The extent of interference which would result from the defendant's reasonable use of his or her property or conduct of his

- 8 -

or her affairs, the circumstances under which the interference occurred, the nature of the area in which the real property is located, and the uses being made of other property in the area.

A person who creates or continues a nuisance is responsible for the injury or damage caused to others by the nuisance.

The defendants in this case have asserted that the natural flow of water in the neighborhood leads to plaintiff's property. You are instructed that even if the natural flow of water in the neighborhood leads to plaintiff's property, the defendants are liable if they created a change in that water flow which created a nuisance to the Wietzkes.

Id. at 368-69, 26 A.3d at 939-40.

We held that the jury instructions issued by the trial judge were a correct exposition of the law and that, for private nuisance claims, the jury shall consider the reasonableness of the offending landowner's use of his or her property, the locality of the affected landowner's property, the surrounding circumstances, and the substantiality of the interference with the plaintiffs' use and enjoyment of their property. Id. at 381, 26 A.3d at 947. Referring to our decision in Washington Suburban Sanitary Commission v. CAE-Link Corp., 330 Md. 115, 622 A.2d 745 (1993), we stated in Wietzke that in CAE-Link Corp.,

[w]e concluded that, because the creation of a nuisance resulted in strict liability, making out a *prima facie* case of nuisance did not require a showing that the Commission had been negligent. In so doing, however, we did not dramatically revise our nuisance jurisprudence, as the Wietzkes' have argued, such that the finding of a private nuisance no longer involves a balance of the competing property interests at stake.

Wietzke, 421 Md. at 382-83, 26 A.3d at 948.

To be sure, we held that we perceived little merit in the Wietzkes' argument that the concept of strict liability was not covered in the trial judge's instruction. See id. at 383, 26

A.3d at 948. We explained that "[s]trict liability is defined as: Liability that does not depend on actual negligence or intent to harm, but that is based on the breach of an absolute duty to make something safe." Id. at 383, 26 A.3d at 948. We concluded that the concept of strict liability was "articulated, correctly, in the trial judge's instruction that '[a] person who creates or continues a nuisance is responsible for the injury or damage caused to others by the nuisance.'" Id. at 383, 26 A.3d at 948. Our holding in Wietzke did not impose a *mens rea* standard for public nuisance liability requiring that a defendant's conduct be negligent or reckless or that the defendant's conduct be wrongful.

Our holding in Wietzke reinforced the principle that has historically existed in our case law—that private nuisance is a strict liability action. As explained, in Wietzke, id. at 369, 26 A.3d at 939-40, with respect to the nature of the conduct that establishes private nuisance, we held that consistent with the definition of strict liability, "[a] person who creates or continues a nuisance is responsible for the injury or damage caused to others by the nuisance." Applying that standard, the last sentence of the jury instruction that we upheld in Wietzke instructed the jury that "even if the natural flow of water in the neighborhood leads to plaintiff's property, the defendants are liable if they created a change in that water flow which created a nuisance to the Wietzkes." Id. at 369, 26 A.3d at 940.

The real question that the Majority is grappling with is whether establishing private nuisance liability requires proof of a continuing or recurring intrusion and, if so, what the definition of continuing and recurring should be. To answer those questions, it is not necessary to label continuing or recurring conduct as "wrongful conduct" and to do so is both misleading and confusing. A review of our case law reveals that, without requiring

- 10 -

proof that the conduct at issue was continuous or recurring, we have upheld findings of private nuisance where the conduct involved could potentially be said to be continuing or recurring. It is clear, though, that the cases do not stand for the proposition that a necessary element of a private nuisance claim is that a defendant must have engaged in conduct that is "wrongful because it creates a continuous or recurring and unreasonable intrusion onto a plaintiff's use and enjoyment of his or her property." Maj. Slip Op. at 42.

Corbi v. Hendrickson, 268 Md. 459, 461, 302 A.2d 194, 195 (1973), involved the Circuit Court for Baltimore County having issued an order permanently enjoining appellants from playing loud music in a manner that "noise made by them is transmitted onto the properties of the appellees" and deprived them of the reasonable use and enjoyment of their homes. (Citation modified). In Corbi, id. at 463-64, 302 A.2d at 197, we stated:

> [A]ppellants raise three contentions in hope of obtaining a reversal of either the injunction, the finding of contempt, or both. First, they posit that the chancellor erred when he admitted into evidence, allegedly without a proper foundation, a tape recording made by one of the appellees of the type of music that was annoying them. Second, appellants argue that if the recording was admissible then Lawrence Corbi should have been permitted to testify about the results of a test he made in court using a decibel meter which showed that the volume of the voice of one of the appellees on the tape was far greater than the actual volume of her voice in court. Finally appellants urge that the chancellor erred when he held appellants to be in contempt.

We held that "though not a nuisance per se . . . where a trade or business as carried on interferes with the reasonable and comfortable enjoyment by another of his property, a wrong is done to a neighboring owner for which an action lies at law or equity." Id. at 464, 302 A.2d at 197. We affirmed the enjoining of the transmittal of loud noises and vacated

the circuit court's contempt finding and remanded the matter for further proceedings, explaining we did not need to address the contention that "in view of the obvious efforts being made to correct the nuisance there was not sufficient evidence to justify the chancellor's conclusion that the appellants were in contempt." Id. at 468, 302 A.2d at 199.

Likewise, in Bishop Processing Co. v. Davis, 213 Md. 465, 468-69, 471, 132 A.2d 445, 446, 447 (1957), we enjoined the defendant owner and operator of a processing plant from maintaining and operating the plant because the odors from the plant interfered with the plaintiffs' lawful use and enjoyment of their properties. We noted, however, that the defendant was "unquestionably making an honest effort to improve the unfortunate situation and to dispense with the odors completely[.]" Id. at 470, 132 A.2d at 447.

In Fox v. Ewers, 195 Md. 650, 654, 662, 75 A.2d 357, 358, 362 (1950), we affirmed the trial court's decree enjoining the defendant from storing asphalt or parking or storing trucks, tractors, and trailers on his property or operating them on the property where "such use of defendant's property having been found to cause odors, fumes and noises to penetrate plaintiffs' dwelling, causing serious disturbance to the peaceful enjoyment of their property and their personal welfare, and to constitute a nuisance." We adopted the trial court's opinion, adding a "brief comment" indicating that the "[d]efendant's contentions as to plaintiffs' specific complaints, *e. g.*, noises and vibration, odors, gnats, [were] adequately dealt with in [the trial court's] opinion." Id. at 655, 660, 75 A.2d at 358, 361. The trial court's opinion revealed that the plaintiffs testified about noise, odor, and gnats emanating from asphalt leakage from the defendant's equipment. See id. at 656-57, 75 A.2d at 359. The trial court observed that "[t]here is no denial that there is some leakage

from [the defendant's] distributors on to the ground" and that the defendant stated that he had undertaken using small stones to cover up the leakage.  Id. at 657, 75 A.2d at 359.

In Meadowbrook Swimming Club v. Albert, 173 Md. 641, 643-44, 197 A. 146, 147 (1938), we affirmed the trial court's decree enjoining the continuance of a noise nuisance from an amusement place with a swimming pool, dance floor, and musicians' stand.  The neighboring residents and property owners sent complaints to the defendant, who undertook to minimize the noise.  See id. at 644, 197 A. at 147.  In issuing the injunction, the trial court noted that the law is clear that where a business "as carried on interferes with the reasonable and comfortable enjoyment by another of his property a wrong is done to a neighboring owner for which an action lies at law or equity."  Id. at 645, 197 A. at 148.   In addressing the defendant's contention that the injunction should not have been issued because it intended to build a roof over the dance floor to limit the transmission of sound, we stated that the defendant had failed to abate the disturbance, which had been the subject of complaints, for two years before the lawsuit and therefore "could not validly assert a right to have the restraining decree longer deferred."  Id. at 648-49, 197 A. at 149.  In other words, we upheld the trial court's determination that a nuisance existed, which was a finding that the trial court reached without requiring that the plaintiff prove that the defendant had negligently or intentionally created a nuisance, and concluded that the defendant's assertion that it would abate the nuisance was not sufficient to preclude entry of an injunction.

In Washington Clears & Dyers v. Albrecht, 157 Md. 389, 396, 146 A. 233, 235-36 (1929), we affirmed the trial court's determination that the operation of the defendant's

cleaning and dyeing plant resulted "in the emission of gases, fumes, and vapors which so affected the health, comfort, or convenience of persons of normal sensibilities residing near it as to deprive them of the reasonable enjoyment of their homes[.]"

In Susquehanna Fertilizer Co. v. Malone, 73 Md. 268, 276, 20 A. 900, 900 (1890), we affirmed the jury's award of damages for the plaintiff against the defendant fertilizer factory and reiterated the "settled" principle "that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie[,]" "without regard to the locality where such business is carried on[,]" whether the business is lawful and useful, or whether "the best and most approved appliances and methods may be used in the conduct and management of the business."

In Woodyear v. Schaefer, 57 Md. 1, 5, 13 (1881), we remanded the case for issuance of an injunction where the defendant slaughterhouse was emptying blood and discharging animal waste into a stream a mile above the plaintiff's mill, creating an offensive odor and causing the mill's employees to become sick. We stated that slaughterhouses have been held to be *prima facie* nuisances and that blood running into a stream is a nuisance that will be restrained. See id. at 11. In remanding the case for issuance of an injunction, we focused on the injury suffered by the plaintiff, not on whether the defendant had knowledge or notice of the conditions creating the nuisance. See id. at 12 ("We think that the complainant has shown himself to have suffered greatly, and likely to suffer more in the

future, from the nuisance to his property, whereby it is likely to become practically valueless, unless the injury is restrained.").

In <u>Dittman v. Repp</u>, 50 Md. 516, 520-21, 523 (1879), we affirmed an order granting an injunction where the defendants' machinery used in brewing beer produced continual vibration and jarring in the plaintiff's house in the building adjoining the defendants' business. We stated that, in nuisance cases, "the question is, whether the nuisance complained of, will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant." <u>Id.</u> at 522. And, where the question is nuisance from noise or vibration, "reference must always be had to the locality, the nature of the trade, the character of the machinery, and the manner of using the property producing the annoyance and injury complained of." <u>Id.</u>

These cases demonstrate findings of private nuisance based on conduct that could potentially be considered in some sense continuous or recurring, but it is plain that the cases do not impose such a requirement much less mandate that a necessary element of a private nuisance claim is that a defendant must have engaged in wrongful conduct. To be sure, in <u>Corbi</u> and other cases, we commented that where a defendant was engaging in business in a manner that interfered with the reasonable and comfortable enjoyment of the plaintiff's property, a wrong was done, but in none of the cases that I have reviewed has the Court required proof of wrongful conduct by a defendant under any definition of the phrase. Rather, in upholding the findings of public nuisance, we explained that the

- 15 -

defendants had engaged in conduct that had deprived others of the reasonable use and enjoyment of their property and that when this occurs "a wrong is done to a neighboring owner for which an action lies at law or equity." Corbi, 268 Md. at 464, 302 A.2d at 197; Bishop Processing Co., 213 Md. at 474, 132 A.2d at 449; Meadowbrook Swimming Club, 173 Md. at 645, 197 A. 148; see also Washington Cleaners & Dyers, 157 Md. at 395-96, 146 A. at 235 ("[T]here is wrong to the neighboring owner for which an action will lie."); Susquehanna Fertilizer Co., 73 Md. at 276, 20 A. at 900 ("[A] wrong is done to the neighboring owner, for which an action will lie[.]"). Saying that a nuisance constitutes a wrong for which there is a remedy at equity and law is not the same as saying that to prove the tort of private nuisance, a plaintiff must prove that a defendant engaged in wrongful conduct. And defining wrongful conduct as conduct that is continuous or recurrent is neither justified by our case law nor helpful.

Even so, because the Majority has changed the standard of proof, it is worth noting that contrary to the Majority's analysis, applying its new standard to the evidence developed at trial in this case results in the conclusion that the judgment of the Appellate Court should be affirmed. Viewing the evidence in the light most favorable to the Abels, as we must and applying the standard announced by the Majority, the record in this case demonstrates that the City engaged in "non-negligent conduct [that] was wrongful because it caused a continuous or recurring and unreasonable invasion" of the Abels' property, as the Majority has now held is required. Maj. Slip Op. at 39.

At trial, the Abels called Anthony Paglia to testify as an expert in sewer systems. Testifying as an expert witness, Mr. Paglia explained that, on December 23, 2019, a sewer

- 16 -

backup occurred in a house on the same street as the Abels and had also been caused by a clog in the main sewer line. Mr. Paglia testified that the City failed to clean the main sewer area, which allowed additional debris to accumulate on the existing debris left in the sewer line, creating another main line blockage. Mr. Paglia testified that it takes a considerable amount of time that would be much more than five days for a back up to recur in a sewer that had been cleaned properly. At trial, the Abels produced evidence demonstrating, among other things, that the City took at least 17 hours to respond to their initial call about the sewage and that the stench lingered in their house for months.

Although the jury found the evidence insufficient to establish negligence, Mr. Paglia's testimony established that the City's failure to properly clean the sewer line after an earlier back up caused the back up of sewage onto the Abels' property. Under the Majority's holding, the testimony produced by the Abels at trial was sufficient to establish that the City engaged in the wrongful conduct of causing a continuous or recurring and unreasonable invasion of sewage onto the Abels' property. Maj. Slip Op. at 38-39. Because the Majority has not defined what it means by continuous or recurring, there is no reason to conclude otherwise.

Nonetheless, applying a standard that did not govern at the time of trial, the Majority goes through an analysis and concludes that the City did not "engage[] in a wrongful act that caused the damage to the Abels' property[,]" *i.e.*, the Abels failed to meet the burden of proof (that they did not know about) and reverses the judgment of the Appellate Court. Maj. Slip Op. at 41-42.

For the above reasons, respectfully, I dissent.

Justice Killough has authorized me to state that he joins in this opinion.

IN THE SUPREME COURT

OF MARYLAND

No. 26

September Term, 2025

_____

MAYOR AND CITY COUNCIL OF
BALTIMORE

V.

THERESA ABEL, et al.

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Dissenting Opinion by Killough, J., which
Watts, J., joins.

_____

Filed: July 29, 2026

I respectfully dissent. I join Justice Watts' dissenting opinion, which demonstrates that private nuisance has long been a strict liability action in Maryland. Watts, J., dissenting, at 1-5. Nuisance does not require proof of fault. It can rest on a defendant's negligence, but it need not; liability attaches when the defendant's conduct "cause[d] substantial injury to the property of another[,]" whether or not the defendant was careful. *Susquehanna Fertilizer Co. v. Malone*, 73 Md. 268, 280 (1890). Under the Majority's formulation, "[w]here the defendant's conduct does not involve conduct that is not otherwise negligent, reckless, or abnormally dangerous," strict liability attaches only after a plaintiff demonstrates that the defendant's conduct "may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion." Maj. Slip Op. 42. In so far as the Majority's position shifts the main focus of the analysis from the nature of the interference to the defendant's conduct, it finds no footing in our cases. *See* Watts, J., dissenting, at 1-5, 10-17; *see also Wash. Suburban Sanitary Com'n v. CAE-Link Corp.*, 330 Md. 115, 125 (1993) ("Virtually any disturbance of the enjoyment of the property may amount to a nuisance so long as the interference is substantial and unreasonable and such as would be offensive or inconvenient to the normal person. (citation omitted)). The Appellate Court appropriately observed that "[w]hether an interference is unreasonable is determined by the injury caused by the condition and not by the conduct of the party creating the condition." *Mayor and City Council of Balt. v. Abel*, 2025 WL 829733, at *3 (2025) (citing *CAE-Link*, 330 Md. at 140-42).

That said, the Majority now reverses because, in its view, "there was no evidence upon which a jury could find that any conduct by the City caused a continuous or recurring

invasion of the Abels' property." Maj. Slip Op. at 43. The only error the Majority identifies below is that the trial judge let the jury answer the question. That is a ruling on the sufficiency of the evidence, and it is mistaken. The evidence of a continuous invasion was more than sufficient to send the issue to the jury; the jury was instructed on the very requirement the Majority says went unproven; and no court below committed any error in getting the question to the jury or in sustaining the answer. I would affirm the judgment of the Appellate Court of Maryland.

I write separately to make three additional points. *First*, the sole error the Majority identified below is a derivative of its own view of the evidence. *Second*, the record contains far more than the "slight" evidence our cases require to generate a jury question, and the jury was instructed on continuity at the City's own request. *Third*, if the law of nuisance is to be narrowed, that judgment belongs to the General Assembly and not to this Court.

### I. The Only Error the Majority Identifies Is That the Jury Was Allowed To Decide Whether The City Was Liable.

It is undisputed that on the morning of December 28, 2019, the City's sewer main backed up into the Abels' basement and that, for seventeen hours, their home served as a terminal of the City's system. The basement, in Mrs. Abel's words, was like "the hippo house at the zoo." The Abels dealt with the aftermath for at least a month, enduring a stomach-turning, noxious smell and "a constant headache[.]" Mr. Abel worried about what the sewage would do to his household, from electrical problems to the effect of the unsanitary conditions on his immunocompromised mother-in-law, who was on "24/7 oxygen." *Id.* The trial court denied the City's motion for judgment, concluding that a

2

reasonable fact-finder could decide the 2019 nuisance claim in the Abels' favor. The jury found the City responsible. A unanimous panel of the Appellate Court affirmed. *Mayor & City Council of Balt. v. Abel*, 2025 WL 829733, at \*5 (Md. App. Ct. Mar. 17, 2025). I would as well.

The sole error the Majority identifies in this trial is that, "[b]ecause there was insufficient evidence as a matter of law to generate a jury question as to whether there was a continuous intrusion into the Abels' home, the circuit court erred in denying the City's motion for judgment." Maj. Slip Op. at 41. It is worth pausing on what that error consists of. The Majority does not hold that the trial court misstated the law of nuisance. It does not hold that the jury was wrongly instructed—nor could it, for the City requested the instruction it received.[1] It does not hold that the court admitted evidence it should have excluded, or that it applied the wrong standard to the motion before it. The single error the Majority finds is that the trial judge, having heard the evidence, permitted the jury to decide whether the invasion was continuous—a question that is ordinarily the jury's to decide. *Cf. Wietzke v. Chesapeake Conf. Ass'n*, 421 Md. 355, 383 (2011). That is not an error of law. It is the Majority's disagreement with the jury's answer, restated as a criticism of the judge who let the jury give it.

---

[1] The City requested the non-pattern continuity instruction, asked the court to instruct the jury that "the test is not the [d]efendant's negligence," and accepted, without objection, a verdict sheet that posed a single nuisance question for each incident. The Majority does not hold the instruction was error—to do so, it would have to confront the fact that the City requested the very instruction it would attack, and a party cannot win reversal on an error it invited. *See Klauenberg v. State*, 355 Md. 528, 544–45 (1999); *State v. Rich*, 415 Md. 567, 575–76 (2010).

3

Nor does the Majority identify error by the Appellate Court, whose judgment it reverses. That court framed the question exactly as our cases require: "whether the condition created was either continuous or a recurring infringement on the Abels' enjoyment of their property." *Abel*, 2025 WL 829733, at *3. It recognized that a finding of nuisance "does not turn on a showing of a failure to act reasonably or reckless, intentional, or abnormally dangerous conduct." *Id.* And it held that "a jury could reasonably find that the interference was continuous or repetitive, substantial, and offensive or inconvenient to the normal person." *Id.* (citing *CAE-Link*, 330 Md. at 125). That is the right question, asked the right way. The Majority does not say that the Appellate Court applied the wrong standard, misread the record, or overlooked authority. It answers the same question differently.

Nor does the Majority reverse on anything that happened at trial. In its motion for judgment on the nuisance claim, the City pressed one ground before the trial judge that survives here: continuity. It did not argue that the Abels had failed to prove wrongful conduct. It disclaimed the theory of an intentional invasion altogether, telling the court that "there has been no allegations of intentional torts here." A party moving for judgment must "state with particularity all reasons why the motion should be granted[,]" Md. Rule 2-519(a), and is confined on appeal to the grounds it gave. *See Sage Title Grp., LLC v. Roman*, 455 Md. 188, 215 (2017).

That leaves the standard of review, which the Majority recites and then does not apply. We review the denial of a motion for judgment *de novo*. Maj. Slip Op. at 11-12; *Webb v. Giant of Md., LLC*, 477 Md. 121, 132 (2021). But *de novo* review of the ruling is

4

not *de novo* review of the facts. To review the trial court's ruling without deference is to ask, for ourselves, whether there is "any evidence, *no matter how slight*, that is legally sufficient to generate a jury question[.]" *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 394 (2011) (emphasis added). It is not to ask whether we would have found a continuous invasion. We do not reweigh evidence the jury has already weighed; we do not assess credibility; and we do not answer for ourselves questions the jury was entitled to answer. "[A]n appellate court has no power to review the finding of the jury upon matters of fact," and "even if we would reach a different conclusion than the jury, we are not permitted to substitute the jury's factual findings for our own." *Est. of Blair by Blair v. Austin*, 469 Md. 1, 18 (2020) (citation modified). Our role is legal reasoning, not fact-finding.

## II. There Was Legally Sufficient Evidence to Generate a Jury Question on Continuity, and the Jury Was Instructed to Find It.

The Majority reverses because, in its view, "there was no evidence upon which a jury could find that any conduct by the City caused a continuous or recurring invasion of the Abels' property." Maj. Slip Op. at 43. The record says otherwise, and the Majority's own opinion recites much of it. Five days before the Abels' basement filled, the same main line backed up at an upstream neighbor's property, and the City sent a crew to clear it. The Abels' expert testified that the City's cleaning did not meet industry standards, and that a renewed blockage of the kind that flooded the Abels was the predictable consequence of leaving the line as the City left it. Then the line failed again, on the same block, five days

5

later.  Sewage rose into the Abels' home and stayed for seventeen hours, through three separate calls for help.

That is evidence of a recurring invasion arising from a continuing condition.  A jury was free to reject it.  But this jury did not.  And the question before us is not whether we would have found a continuous invasion; it is whether there was "any evidence, *no matter how slight*," from which a reasonable jury could.  *Thomas*, 423 Md. at 394 (emphasis added).  There was more than a scintilla of such evidence here, and that ends the inquiry.

What happened at trial is harder to reconcile with the Majority's holding than its opinion acknowledges.  The jury was instructed—at the City's request—that "a single act not likely to be repeated will not sustain a suit in nuisance."  The Majority quotes that instruction. Maj. Slip Op. at 39.  It observes that "the parties recognized that Maryland's private nuisance law requires a continuous and unreasonable intrusion[.]"  *Id.*  What the Majority does not say is what follows from it.  A jury that was told that a single, non-recurring act cannot sustain a nuisance claim, and which nonetheless returned a verdict for the Abels on this claim, necessarily found that this invasion was not a single, non-recurring act.  The finding the Majority says no reasonable jury could make is the finding this jury was required to make before it could return the verdict it returned.  The Majority quotes the charge and then decides for itself the question the charge committed to the jury.

The jury had a further reason to answer as it did.  This case was not bifurcated.  The same jury, in the same trial, heard evidence of a second sewage backup into the same home in 2022, and it found the City liable in nuisance for that backup as well—a verdict the City did not challenge.  Maj. Slip Op. at 2 n.1.  A jury asked whether the December 2019

6

invasion was "a single act *not likely to be repeated*" thus had before it evidence that it was repeated. The Majority responds that the 2022 backup was "separate from and unrelated to" the 2019 backup, that it "arose from an unrelated and different set of facts[,]" and that it involved "a sewer jet entering the home due to the negligent use of a sewer cleaning pressure hose truck." *Id.* at 40 & n.9. I do not read the record the same way as the Majority, and they answered a question the jury instructions did not ask. The charge did not ask the jury whether the two invasions shared a common cause. It asked whether the act was likely to be repeated.

But this question need not be resolved to decide this case, because the Majority answers it itself. The Majority holds that where a defendant's conduct is not otherwise negligent, reckless, or abnormally dangerous, "the . . . conduct may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion onto" the plaintiff's property. Maj. Slip Op. at 42. On that definition, a continuous and unreasonable intrusion is not merely evidence of wrongful conduct. It *is* wrongful conduct.[2] And a continuous and unreasonable intrusion is precisely what this jury, properly instructed, found. The Majority defines wrongfulness in terms of continuity, and then holds that no evidence of continuity exists—while reciting the December 23 backup, the deficient cleaning, and the recurrence five days later in its own statement of facts. Maj. Slip Op. at 41; *see also Thomas*, 423 Md. at 394. Nor does the jury's verdict on negligence supply the

---

[2] I disagree that the Abels were required to show "wrongful conduct" as a matter of law. *See* Watts, J., dissenting at 1-5. Nevertheless, even under the Majority's formulation, this jury found "wrongful conduct."

missing element.[3]  In essence, the Majority's holding contains two erroneous implications: (1) the trial court erred in sending the nuisance claim to the jury; and (2) the jury unreasonably found that the City continuously interfered with the Abels' property.

### III. The Remedy Replaces the Jury, and the Policy Concern Belongs to the General Assembly.

The Majority's underlying concern is that liability here would make the City "an absolute insurer" against intrusions caused by any user of a system serving 1.5 million people.  Maj. Slip Op. at 41 n.10.  But the record says nothing about how many sewer-backup claims the City faces or what it pays for them.  Nor is municipal solvency a matter awaiting this Court's protection.  The General Assembly has already capped the damages recoverable against a local government.  Md. Code Ann., Cts. & Jud. Proc. § 5-303(a).  If that ceiling requires adjustment, the adjustment is the Legislature's to make.  And the size of the system cuts another way than the Majority supposes: a loss that is catastrophic when borne by a single household is slight when spread across the ratepayers who benefit from the system.  *Cf. Armstrong v. United States*, 364 U.S. 40, 49 (1960) ("fairness and justice"

---

[3] The Majority reasons in part that the jury found the City not negligent as to the 2019 backup, and that recklessness, purpose, and abnormally dangerous activity were not alleged.  Maj. Slip Op. at 38-39.  That finding does not fully answer the question the Majority asks.  Negligence asks whether the City's conduct fell below reasonable care; the Majority's own test asks, in the alternative, whether the City's conduct created a continuous and unreasonable intrusion.  A defendant may be careful and still maintain a continuing condition that unreasonably invades a neighbor's property—which is what *Susquehanna* and *Meadowbrook* hold.  Read coherently, this verdict finds careful conduct and a continuing, unreasonable interference—findings that coexist without difficulty.

forbid "forcing some people alone to bear public burdens which . . . should be borne by the public as a whole").

While the concern over fiscal matters involving public municipal utility companies is a legitimate concern as a matter of public policy, it is not a legitimate matter for a court, certainly not as it relates to the facts of this case. The jury's verdict in this case was not based on a stranger's blockage or their greasy rags. It was not based on happenstance. It was based on the City's own failure to clear a line the City had just been called out to clear. And to the extent municipal exposure warrants a ceiling, that judgment belongs to the General Assembly, which can hold hearings, weigh the cost, and calibrate a remedy. It certainly is not a reason to take a verdict from a jury.

## IV. Conclusion

The trial court, viewing the evidence in the light most favorable to the non-moving party, submitted the nuisance claim and the embedded continuity question to the jury. The jury did what we ask juries to do. It followed the instructions—including the one the City requested—deliberated within a verdict sheet the City accepted, distinguished negligence from nuisance, and calibrated damages to the proven harm. The City may not have been negligent in 2019, but the jury found it responsible. That is the space between negligence and nuisance our cases have occupied for more than a century. *See Susquehanna Fertilizer*, 73 Md. at 280; *Taylor v. Mayor & City Council of Balt.*, 130 Md. 133 (1917); *Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 330 Md. 115, 126 (1993).

Only one participant in this case is said by the Majority to have erred, and only in one respect: the trial judge, for letting the jury decide. The jury is not faulted, at least not

9

explicitly—it followed an instruction the City itself requested. The Appellate Court is not faulted—it asked whether a reasonable jury could find a continuous invasion and answered as our cases require. The parties are not faulted—they tried this case under the law the Majority says has governed all along. What remains, after everything, is that a jury of the Abels' peers answered a question of fact and this Court prefers a different answer.

The Abels did not merely prevail in this case. They prevailed under a jury charge that is more exacting than the law required. At the City's request, the jury was given a non-pattern instruction that told them that a single act not likely to be repeated would not sustain a suit in nuisance—a continuity requirement closer to the Majority's understanding of this claim than to the strict liability standard our cases have long applied. This jury instruction was an incorrect exposition of Maryland law that favored the City. *See* Watts, J., dissenting, at 7, 10-11. Yet, the Abels satisfied it anyway. Six jurors, so instructed, found a continuing and unreasonable invasion of the Abels' home. Whatever else may be said of that verdict, it was not the product of a lenient standard.

The right to trial by jury in civil cases is not a formality we honor when the verdict is convenient. Our Constitution commands that it "be inviolably preserved." Md. Decl. of Rights, art. 23. It is difficult to reconcile today's result with that command.

I would affirm the judgment of the Appellate Court of Maryland. I respectfully dissent. Justice Watts has authorized me to state she joins this dissent.

10